DURANT v DEPARTMENT OF EDUCATION (ON REMAND)

Docket No. 63901. Submitted April 22, 1982, at Lansing.—Decided
    October 10, 1983. Leave to appeal applied for.

    Donald Durant and several other individuals, as taxpayers of the
    Fitzgerald School District, and the Fitzgerald Public Schools
    brought an original action for mandamus in the Court of
    Appeals against the Department of Education, the Department
    of Management and Budget and the State Treasurer, seeking to
    compel the defendants to fund the Fitzgerald Public Schools in
    the fiscal year 1979-1980 in the same proportion as in fiscal
    year 1978-1979. Plaintiffs claimed that the state had provided a
    smaller percentage of revenues than that required by the
    Michigan Constitution. Defendants denied that allegation and
    also claimed that plaintiffs lacked standing to bring the action.
    The Court of Appeals held that plaintiffs had standing to bring
    the action but denied mandamus on the basis that plaintiffs
    had not exhausted their administrative remedies because they
    had not presented their claims to the local governmental
    claims review board, 110 Mich App 351; 313 NW2d 571 (1981).
    Plaintiffs sought leave to appeal in the Michigan Supreme
    Court. The Michigan Supreme Court, in lieu of granting leave
    to appeal, reversed and remanded the case to the Court of
    Appeals, instructing the Court of Appeals to consider the
    merits of the case since the plaintiffs are not required to
    exhaust their administrative remedies prior to the resolution of

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur 2d, Constitutional Law § 125.
[1, 2] 73 Am Jur 2d, Statutes §§ 169-173.
[2, 5] 16 Am Jur 2d, Constitutional Law § 123.
    73 Am Jur 2d, Statutes §§ 203-208.
[3] 68 Am Jur 2d, Schools §§ 78 *et seq.*, 93, 94, 109 *et seq.*
    71 Am Jur 2d, State and Local Taxation §§ 59, 181.
    Determination of school attendance, enrollment, or pupil population
        for purposes of apportionment of funds. 80 ALR2d 953.
[4] 68 Am Jur 2d, Schools § 91.
[6] 68 Am Jur 2d, Schools § 96.
[7-9] 68 Am Jur 2d, Schools § 85 *et seq.*
[10] 52 Am Jur 2d, Mandamus §§ 181, 182.

the legal issues involved, 413 Mich 862; 317 NW2d 854 (1982). Plaintiffs' allegation is that the reduction in state funding to the Fitzgerald School District violated the Headlee Amendment to the Michigan Constitution. On remand, *held:*

1. The broad concept of "education" is too indefinite to be considered an existing activity or service required of school districts by state law within the meaning of the Headlee Amendment.

2. Only those specific and identifiable programs which the state requires school districts to provide by state statute or state agency regulation fall within the state financing requirements of the Headlee Amendment.

3. The "necessary costs" of a required service or activity are those costs which are essential to the completion of the intended purpose of the state-mandated activity, and they must be determined on a statewide basis, computed according to the actual cost to the state, were it to provide the required activity or service.

4. The state is not required to maintain the level of unrestricted state school aid which was present at the time the Headlee Amendment became effective.

5. The state is required to maintain the level of funding of categorical aid for the necessary costs of programs required of school districts by state statute or state agency regulation that existed at the time the Headlee Amendment became effective.

6. The Court of Appeals was unable to resolve, on the record before it, the issue of whether the Fitzgerald School District incurred excessive costs in state-mandated services and activities, which the state asserts as a justification for its reduction of its categorical aid for those services and activities.

7. Because mandamus will not generally lie in cases involving disputed facts and because the Legislature created the local government claims review board to resolve such questions, the parties should bring their disputed factual questions before that board so that a suitable evidentiary record can be developed followed by an appropriate determination by an administrative agency designed to resolve such factual disputes. Thereafter, if the parties are still aggrieved, they will have adequate review available in a judicial forum.

Plaintiffs' complaint for mandamus is dismissed without prejudice to their right to pursue alternate remedies provided by law.

1. CONSTITUTIONAL LAW — JUDICIAL CONSTRUCTION.

The interpretation of constitutional provisions by the Legislature,

while entitled to weight in determining the proper construction of those provisions, is not controlling in a court's interpretation of a constitutional amendment for which there is no significant precedential guidance; the interpretation derived from established rules of constitutional construction must ultimately decide the issue.

2. CONSTITUTIONAL LAW — JUDICIAL CONSTRUCTION.

The primary rule of constitutional construction is the rule of "common understanding", *i.e.,* a constitution is made for the people and by the people, and the interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it; a second rule is that, to clarify meaning, the circumstances surrounding the adoption of a constitutional provision and the purpose sought to be accomplished may be considered.

3. SCHOOLS — STATE AID — UNRESTRICTED AID — CATEGORICAL AID.

The Legislature has provided for two basic types of state aid to local school districts: unrestricted aid and categorical aid; unrestricted aid is a general grant of money based on pupil membership in the school district, wealth of the district as measured by the state equalized valuation of property per pupil, and on local taxing efforts, and this type of aid is not correlated with any specific service or activity required by the state and, therefore, may be used by the school district for such purposes as teacher salaries, transportation, heating, and textbooks; categorical aid is designed to support a specific service or activity provided by a local school district, such as special education or driver's education (MCL 388.1601 *et seq.,* 338.1651 *et seq.,* 257.811; MSA 15.1919[901] *et seq.,* 15.1919[951] *et seq.,* 9.2511).

4. SCHOOLS — STATE AID.

The state may not reduce the amount of categorical aid to which a school district is entitled and then argue that the resulting deficiency may be alleviated by the district's use of its unrestricted state aid.

5. CONSTITUTIONAL LAW — HEADLEE AMENDMENT — SCHOOLS — EDUCATION.

The broad concept of "education" is too indefinite to be considered an existing activity or service required of school districts by state law within the meaning of the Headlee Amendment to the Michigan Constitution (Const 1963, art 9, § 29).

6. Constitutional Law — Headlee Amendment — Schools.
  Only those specific and identifiable programs which the state
  requires school districts to provide by state statute or state
  agency regulation fall within the state financing requirements
  of the Headlee Amendment to the Michigan Constitution
  (Const 1963, art 9, § 29).

7. Schools — State Aid — Required Services or Activities —
  "Necessary Costs".
  The "necessary costs" of a required service or activity of a school
  district are those costs which are essential to the completion of
  the intended purpose of the state-mandated activity, and they
  must be determined on a statewide basis, computed according
  to the actual cost to the state were it to provide the required
  activity or service.

8. Constitutional Law — Schools — State Aid — Unrestricted
  Aid.
  The state is not required to maintain the level of unrestricted
  state school aid which was present at the time the Headlee
  Amendment became effective (Const 1963, art 9, § 29).

9. Constitutional Law — Schools — State Aid — Categorical
  Aid.
  The state is required to maintain the level of funding of categori-
  cal aid for the necessary costs of programs required of school
  districts by state statute or state agency regulation that existed
  at the time the Headlee Amendment to the Michigan Constitu-
  tion became effective (Const 1963, art 9, § 29).

10. Mandamus — Disputed Facts.
  The remedy of mandamus generally will not lie in cases involving
  disputed facts.

*Clark, Hardy, Lewis, Fine & Pollard, P.C.* (by
*Dennis R. Pollard* and *Gary Pollack),* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, and *Gerald F. Young*
and *James E. Riley,* Assistants Attorney General,
for defendant.

On Remand

Before: Danhof, C.J., and M. F. Cavanagh and
MacKenzie, JJ.

M. F. CAVANAGH, J. Plaintiffs petitioned this Court for a writ of mandamus, seeking to compel the defendants to fund the Fitzgerald Public Schools in the same proportion as those schools were funded in the fiscal year 1978-1979, pursuant to the so-called Headlee Amendment, Const 1963, art 9, §§ 25-34. We denied mandamus on the basis that the plaintiffs had not exhausted their administrative remedies because they had not presented their claims to the local governmental claims review board under MCL 21.240; MSA 5.3194(610). *Durant v Dep't of Education,* 110 Mich App 351; 313 NW2d 571 (1981). The Michigan Supreme Court in lieu of granting leave to appeal reversed and remanded the case to the Court of Appeals, instructing us to consider the merits of the case since the plaintiffs are not required to exhaust their administrative remedies prior to our resolution of the legal issues involved. *Durant v Dep't of Education,* 413 Mich 862; 317 NW2d 854 (1982).

Plaintiffs allege that the reduction in state funding to the Fitzgerald School District violated the Headlee Amendment to the Michigan Constitution, Const 1963, art 9, §§ 25-34, especially § 29, which reads:

"*The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law.* A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the legislature or any state agency or units of Local Government, unless a state appropriation is made and disbursed to pay the unit of Local Government for any necessary increased costs. The provision of this section shall not apply to costs incurred pursuant to Article VI, Section 18." (Emphasis added.)

Under the foregoing section, the state must continue to finance, at least at the same level, whatever portion of a state-mandated service or activity the state was financing for units of local government at the time the Headlee Amendment went into effect, *i.e.,* December 22, 1978. School districts are defined as units of local government by Const 1963, art 9, § 33. See also MCL 21.233(5); MSA 5.3194(603)(5).

Thus, we must decide the following issues: (1) whether "education" is an existing activity or service required of school districts by state law, within the meaning of the Headlee Amendment, (2) whether the costs that the plaintiffs seek to have the state pay are "necessary costs" of what the school district is required to provide, and (3) whether we should grant the writ of mandamus and compel the defendants to finance any such necessary costs.

We begin by noting that this is a case of first impression, requiring an interpretation of a constitutional amendment without significant precedential guidance. We are aided in our interpretation by MCL 21.231 *et seq.;* MSA 5.3194(601) *et seq.,* an act passed by the Legislature in 1979 to implement Const 1963, art 9, § 29, which is that portion of the Headlee Amendment most pertinent to this case. However, although the interpretation of constitutional provisions by the Legislature is entitled to weight in determining the proper construction of those provisions, it is well established that such interpretations are not controlling. The interpretation derived from established rules of constitutional construction must ultimately decide the issue. *Smith v Auditor General,* 165 Mich 140, 144; 130 NW 557 (1911); *Reed v Civil Service Comm,* 301 Mich 137; 3 NW2d 41 (1942). Therefore, as

Justice WILLIAMS stated in *Traverse City School Dist v Attorney General*, 384 Mich 390, 405; 185 NW2d 9 (1971):

"The primary rule [of constitutional construction] is the rule of 'common understanding' described by Justice COOLEY:
" 'A constitution is made for the people and by the people. *The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it. * * * (Cooley's Const Lim 81.)'* (Emphasis added.) * * *
"A second rule is that to clarify meaning, the circumstances surrounding the adoption of a constitutional provision and the purpose sought to be accomplished may be considered."

With respect to the first issue we must decide, the plaintiffs basically argue that education is a constitutionally mandated service which this state must provide for its citizens and that, in order to discharge this duty, the state created state agencies called "school districts" which are required to provide for the education of those students within their jurisdiction. See Const 1963, art 8, §§ 1 and 2; School Code of 1976, MCL 380.1 *et seq.;* MSA 15.4001 *et seq.,* and *Attorney General ex rel Kies v Lowrey,* 131 Mich 639, 644; 92 NW 289 (1902). Although the school districts have wide discretion to manage their own affairs, the plaintiffs argue that their activities are still required by state law and thus the financing requirements set forth in § 29 of the Headlee Amendment are applicable.

We agree with the plaintiffs that not only is it the policy of this state to encourage the cause of education but the state is also required by the constitution to provide some form of education. Const 1963, art 8, § 2 provides in part:

"The legislature shall maintain and support a system of free public elementary and secondary schools as defined by law. Every school district shall provide for the education of its pupils without discrimination as to religion, creed, race, color or national origin."

We further agree with the plaintiffs' contention that, despite Michigan's system of decentralized public education which gives the local school districts broad discretionary authority over the educational process, school districts are still carrying out a delegated duty to provide the citizens of this state with an educational program. As the Michigan Supreme Court stated in *Lansing School Dist v State Bd of Ed,* 367 Mich 591, 595; 116 NW2d 866 (1962):

"Control of our public school system is a State matter delegated and lodged in the State legislature by the Constitution. The policy of the State has been to retain control of its school system, to be administered throughout the State under State laws by local State agencies organized with plenary powers to carry out the delegated functions given to it by the legislature."

However, the fact that the state has delegated to local school districts its constitutional duty to provide education does not result in the conclusion that all the functions performed by a school district are required by state law within the meaning of the Headlee Amendment. The problem with the plaintiffs' argument is that they have misconstrued the term "state law" and have erroneously assumed that the term encompasses both legislative enactments and administrative regulations as well as the state's constitution. It is based on this assumption that the plaintiffs have made the foregoing argument that school boards are merely agents of the state, fulfilling the state's constitu-

tional obligation to provide an educational program, and thus that the state should continue to finance that program at the same level it was financing it at the time the Headlee Amendment went into effect.

We disagree with the plaintiffs' contention that the term "state law", as used in § 29 of the Headlee Amendment, encompasses the state's constitutional requirements. The Legislature defined the term as:

"(4) 'State law' means a state statute or state agency rule". MCL 21.234; MSA 5.3194(604).

Furthermore, to interpret the term "state law" to include the constitution would be inconsistent with the plain language of § 29 and with the intent behind those who ratified the amendment. The plain language of § 29 specifically refers only to the acts of the Legislature and regulations of state agencies when it discusses "state law". The intent behind those who ratified the Headlee Amendment was to prevent the state Legislature from enacting ever-increasing state laws and regulations which created financial burdens on local units of government, unaccompanied by any financial support to alleviate those burdens. By specifically enacting § 29, the voters sent two messages to the state Legislature: (1) if the state Legislature required local units of government to provide a certain activity or service and the state was financing a certain portion of the necessary costs of that activity or service, the state could not reduce its share of the necessary costs after § 29 became effective, and (2) if the state Legislature wanted to pass a new law or regulation which either required local units of government to provide a new activity or service, or to provide an increased level in an

existing required activity or service, the state was required to pay for any resulting increased costs which were necessary for the local unit of government to discharge its duty.

Given our conclusion that the term "state law" in § 29 refers only to state statutes and state agency regulations, we must next determine what aspects of education which local districts are required to provide by state law the state must finance under § 29.

Under the School Code of 1976, there are a few specific and identifiable services and activities which school districts are required to provide. These programs include: courses in the constitution, history, government, and civics, MCL 380.1166; MSA 15.41166; courses in health and physical education, MCL 380.1503; MSA 15.41503; bilingual instruction in school districts with an enrollment of 20 or more children of limited English-speaking ability, MCL 380.1153; MSA 15.41153; special education, MCL 380.1711; MSA 15.41711; and auxiliary services which are provided to students in public schools must be provided to students at nonpublic schools, MCL 380.1296; MSA 15.41296. In addition, the Motor Vehicle Code of 1949 requires local school districts to provide driver education programs. MCL 257.811; MSA 9.2511. The parties do not appear to dispute the fact that these specific, identifiable programs which are mandated by the state Legislature fall within the purview of § 29 of the Headlee Amendment.

However, the plaintiffs argue that because each school district is required by the School Code of 1976 to provide a minimum of 180 days instruction annually, MCL 380.1284; MSA 15.41284, and only the few aforementioned courses are required by

state law or regulation, a school district must fill the remaining hours of the school day with other impliedly required courses.

Although the state does require school districts to provide a certain number of days of instruction per year, it does not necessarily follow that the state has thus impliedly required school districts to provide other specific courses which should be considered required by state law under § 29. The services and activities which a school district chooses to fill these days, with the exception of the specifically mandated programs, are completely a matter of local discretion. MCL 380.1282; MSA 15.41282 provides:

"The board of a school district shall establish and carry on the grades, schools, and departments it deems necessary or desirable for the maintenance and improvement of the schools, determine the courses of study to be pursued, and cause the pupils attending school in the district to be taught in the schools or departments the board deems expedient."

Thus, the local school board determines the courses the school district will provide and the costs to be incurred in order to provide such courses, including any number of possible variations such as language programs with language laboratories, vocational education programs with training equipment, science programs with science laboratories, and any other such variations which the local school board designs to accommodate the wishes of the local electorate and the needs of the local community.

We hold that such discretionary programs do not fall within the purview of § 29 of the Headlee Amendment because they are not specifically mandated by the state Legislature or a state agency. It

would certainly be unreasonable to hold that a local school board may unilaterally determine what activities or services encompass "education" and then under § 29 of the Headlee Amendment require the state, *i.e.,* all the taxpayers, to help defray the costs of those programs merely because the school district is performing a delegated duty of providing education to its students. We do not think that the drafters of § 29 or the voters who ratified it intended it to be applied in such a manner. Thus, although the state may be constitutionally required to provide an educational program, and although the school districts may have a delegated duty to provide such a program, we conclude that the broad concept of "education" is too indefinite to be considered an existing activity or service required of school districts by state law within the meaning of § 29 of the Headlee Amendment. Only those specific and identifiable programs which the state requires the school districts to provide by state statute or state agency regulation fall within the state financing requirements of § 29.

The second issue we must address is whether the costs the plaintiffs seek to have the state pay are "necessary costs" of those programs the school district is required to provide. Plaintiffs argue that a cost is "necessary" if it is appropriate and helpful to the activity or service to which it is connected. Meanwhile, the defendants point out that the Legislature has defined the term "necessary costs" as it is used in § 29 to mean in essence the cost at which the state could provide the activity or service had it chosen to do so at the state level, rather than at the local level. MCL 21.233(6); MSA 5.3194(603)(6). Defendants also note that the term "necessary" generally has been defined as "essen-

tial" or "indispensable". *American Heritage Dictionary, New College Edition,* p 877.

Const 1963, art 9, § 34 provides:

"The Legislature shall implement the provisions of Sections 25 through 33, inclusive, of this Article."

The Legislature complied with this section by enacting MCL 21.233(6); MSA 5.3194(603)(6), which defines the term "necessary cost" as:

"(6) 'Necessary cost' means the net cost of an activity or service provided by a local unit of government. The net cost shall be the actual cost to the state if the state were to provide the activity or service mandated as a state requirement, unless otherwise determined by the legislature when making a state requirement. Necessary cost does not include the cost of a state requirement if the state requirement satisfies 1 or more of the following conditions:

"(a) The state requirement cost does not exceed a de minimus cost.

"(b) The state requirement will result in an offsetting savings to an extent that, if the duties of a local unit which existed before the effective date of the state requirement are considered, the requirement will not exceed a de minimus cost.

"(c) The state requirement imposes additional duties on a local unit of government which can be performed by that local unit of government at a cost not to exceed a de minimus cost.

"(d) The state requirement imposes a cost on a local unit of government that is recoverable from a federal or state categorical aid program, or other external financial aid. A necessary cost excluded by this subdivision shall be excluded only to the extent that it is recoverable."

In our opinion, the Legislature's definition is con-

sistent with the focus of the Headlee Amendment and should be adopted by this Court.

The term "necessary cost", when used in other state constitutions, has been defined as:

"the term 'necessary expenses' does not imply expenses without which government cannot exist. Still there is implied in it a certain degree of exigency, the essentials of frugality and economy, and a definite quality,— governmental in character,— which do not yield to arguments *ab convenienti* and which cannot be dismissed from the provision without depriving it of all significance. We do not believe that the framers of the Constitution intended that this highly protective restriction should be annulled by an unlimited power of redefinition so that in time the municipal expense budget might become a *potpourri* of subjects representing no real governmental need but rather the urge to find in a patriarchal government a panacea for all the discomforts to which the citizen may be subject." *Purser v Ledbetter,* 227 NC 1; 40 SE2d 702, 707 (1946).

The Iowa Supreme Court, in *Wolf & Son v Independent School Dist,* 51 Iowa 432, 434; 1 NW 695, 697 (1879), a case concerning school expenses, defined "necessary" as " 'indispensably requisite; that cannot be otherwise without preventing the purpose intended' ". We are in agreement with these definitions in that they embrace the general concept that necessary costs are those which are essential to the completion of the intended purpose of the state-mandated activity.

In light of this definition, we still must decide by what method necessary costs are to be computed. MCL 21.233(6); MSA 5.3194(603)(6) defines "necessary costs" basically as the actual cost to the state, were it to provide the activity or service required of local units of government. This definition provides both a ceiling and a floor for "necessary

costs". Such costs are limited to an essential level, since they are fixed at the point at which the state could provide the service. In this way, units of local government are encouraged to keep costs at a reasonable level. In addition, however, units of local government are protected from their actual costs being declared unnecessary, since their figures must be compared with another ascertainable amount. We conclude that determining necessary costs in this manner, on a statewide basis instead of an individualized basis, is consistent with the language of § 29 which speaks to costs required of "units of local government" by state law.

Defendants also argue that, even if the state-financed proportion of the necessary costs of an existing activity or service required of a school district by state law has been reduced under Const 1963, art 9, § 29, the payments of unrestricted state school aid to school districts may be used to make up any such deficiency.

Under the State School Aid Act of 1979, MCL 388.1601 *et seq.;* MSA 15.1919(901) *et seq.,* the Legislature has provided for two basic types of state aid to local school districts, unrestricted aid and categorical aid. Unrestricted aid, provided pursuant to MCL 388.1743; MSA 15.1919(1043), is a general grant of money based on pupil membership in the school district, wealth of the district as measured by the state equalized valuation of property per pupil, and on local taxing efforts. This type of aid is not correlated with any specific service or activity required by the state and, therefore, may be used by the school district for such purposes as teacher salaries, transportation, heating and textbooks. On the other hand, categorical aid is designed to support a specific service or activity provided by a local school district, such as

special education, MCL 388.1651-388.1656; MSA 15.1919(951)-15.1919(956), and driver's education, MCL 257.811; MSA 9.2511.

Plaintiff argues that the state is required to maintain the level of general school aid, *i.e.,* unrestricted aid, that it was providing at the time the Headlee Amendment went into effect. We disagree. Under this theory, changes in the property wealth of the school district or in its taxing effort would make no difference with respect to the percentage of its total expenditures that must be financed by state aid. Such a rigid rule could have inequitable results. A school district which loses property wealth due to the closing of an industry may suddenly be in need of more state aid whereas a school district which gains an industry on its tax rolls may not need to receive the same proportion of state aid for its annual operating expenditures as it was previously receiving.

Although we conclude that the state is not required, under Const 1963, art 9, § 29, to continue its unrestricted aid in the same proportion that existed before § 29 went into effect, we do agree with the plaintiffs that the proportionate contributions by the state for the necessary costs of the categorical programs, *i.e.,* for all programs required of school districts by state law as we have previously defined that term, must be maintained at the level which existed before § 29 became effective. Furthermore, contrary to the defendants' assertion, the state may not reduce the amount of categorical aid to which a school district is entitled and then argue that the resulting deficiency may be alleviated by the district's use of its unrestricted state aid. Such a result would render meaningless our holding that the state may not reduce the level of categorical aid which it pro-

vides for the necessary costs of services and activities required of school districts by state law.

Defendants do not dispute the fact that the state's level of aid for the categorical programs required of the Fitzgerald Public Schools by state law has been reduced. However, the defendants allege that the costs incurred by the school district were excessive and clearly beyond the necessary costs to provide the state-mandated service. This claim involves a factual dispute which is not ripe for our determination. However, we do agree that the state funding of categorical aid which must remain at the same level which existed before § 29 became effective is only that percentage of the "necessary costs" of the categorical programs which were being funded by the state at the time § 29 was enacted.

In our first opinion in this case we noted that the issues presented by the parties involved questions of fact and mixed questions of fact and law, as well as questions of law. *Durant, supra.* As ordered by the Supreme Court, we have decided the legal issues involved, namely that: (1) the broad concept of "education" is too indefinite to be considered an existing activity or service required of school districts by state law within the meaning of § 29 of the Headlee Amendment; (2) only those specific and identifiable programs which the state requires school districts to provide by state statute or state agency regulation fall within the state financing requirements of § 29; (3) the "necessary costs" of a required service or activity are those costs which are essential to the completion of the intended purpose of the state-mandated activity, and they must be determined on a statewide basis, computed according to the actual cost to the state, were it to provide the required activity or service;

(4) the state is not required to maintain the level of unrestricted state school aid which was present at the time § 29 became effective; and (5) the state is required to maintain the level of funding of categorical aid for the necessary costs of programs required of school districts by state statute or state agency regulation that existed at the time § 29 became effective.

However, there remain questions of fact which require evidentiary development before this case may be completely resolved. The state has reduced its categorical aid to the Fitzgerald Public Schools for state-mandated services and activities but argues that the district has incurred excessive costs in those programs. On the record before us, we are unable to resolve this claim.

As we stated in *Durant, supra,* the remedy of mandamus generally will not lie in cases involving disputed facts. *Powers v Secretary of State,* 309 Mich 530; 16 NW2d 62 (1944). It was to resolve these kinds of questions that the Legislature created the local government claims review board, 1979 PA 101, MCL 21.240; MSA 5.3194(610). It is before this board that the parties should now bring their disputed factual questions so that a suitable evidentiary record can be developed followed by an appropriate determination by an administrative agency designed to resolve such factual disputes. Then the parties, if still aggrieved, will have adequate review available in a judicial forum. MCL 24.263; MSA 3.560(163); *Harper Hospital Employees Union, Local No 1 v Harper Hospital,* 25 Mich App 662, 666-667; 181 NW2d 566 (1970).

Therefore, we once again dismiss the plaintiffs' complaint for mandamus, without prejudice to the plaintiffs' right to pursue alternate remedies provided by law.