Per Curiam.
 

 This case, commonly referred to as
 
 “Durant II,”
 
 returns to our Court
 
 [1]
 
 pursuant to a
 
 *188
 
 Supreme Court order of remand.
 
 Durant v Michigan,
 
 459 Mich 874 (1998). Previously, this Court dismissed plaintiffs’ complaint, without prejudice, “for failure of plaintiffs to pursue the case in conformity with the [court] rules.” In particular, our Court ruled that plaintiffs’ complaint was too conclusory and nonspecific for our Court to grant plaintiffs relief.
 
 [2]
 

 
 *189
 
 A unanimous Supreme Court peremptorily reversed and remanded to this Court
 

 to resolve expeditiously the issue on which plaintiffs seek declaratory judgment. MCR 7.302(F)(1). See particularly ¶ A of the request for relief section of the complaint.
 
 [3]
 

 Durant v Michigan,
 
 456 Mich 175, 205 (1997), MCR 2.11(B)(2). The Court of Appeals has jurisdiction to determine the issue under Const 1963, art 9, § 32 because the gravamen of the action is a failure to comply with art 9, § 29. [459 Mich 876.]
 

 We grant, in part, plaintiffs’ request for a declaratory judgment. We hold that the State School Aid Act, MCL 338.1601
 
 et seq.;
 
 MSA 15.1919(901)
 
 et seq.,
 
 as amended by 1997 PA 142 and 1998 PA 339 (State School Aid Acts), is unconstitutional in part. We declare that the state violated the Michigan Constitution when it enacted 1997 PA 142 and 1998 PA 339 to the extent that these acts allocate the revenues pro
 
 *190
 
 vided to school districts pursuant to Proposal A (art 9, § 11), in order to satisfy its independent funding obligation under the Headlee Amendment (art 9, §§ 25-34). In all other respects, we grant summary disposition in favor of the state.
 

 i
 

 This case requires us to define the interplay between the Headlee Amendment, Proposal A, and the State School Aid Acts. Pursuant to the Supreme Court’s remand order, we address the merits of plaintiffs’ complaint.
 

 Plaintiffs, 244 taxpayers representing 225 school districts and 11 intermediate school districts, have commenced this original action in this Court under Const 1963, art 9, § 32, MCR 2.605, 7.203(C)(2), 7.216(A)(7), and MCL 600.4401; MSA 27A.4401, alleging that defendants (herein referred to collectively as the state) have underfunded special education programs and services by approximately $272,307,416 during the 1997-98 school year and an as yet to be determined amount for the 1998-99 and 1999-2000 school years, and special education transportation services by approximately $68,237,573 for the 1997-98 school year and as of yet undetermined amounts for the 1998-99, 1999-2000, and 2000-01 school years. The crux of plaintiffs’ challenge is that the Legislature enacted 1997 PA 142 and 1998 PA 339 to divert foundation allowance funding, which is constitutionally guaranteed to local and intermediate school districts and prescribed for the general operating costs of those districts by art 9, § 11, to make up for the revenue shortfall in categorical funding for state-mandated special education programs, services, and
 
 *191
 
 transportation. Plaintiffs allege that by diverting the foundation allowance funding the state has avoided paying for state-mandated services from its own revenues and, instead, is relying on local school districts’ revenues guaranteed to them by art 9, § 11 to satisfy constitutionally mandated state funding obligations in violation of art 9, §§ 11 and 29,
 
 Durant v State Bd of Ed,
 
 424 Mich 364, 391-392; 381 NW2d 662 (1985), and
 
 Durant v State Bd of Ed (On Remand),
 
 129 Mich App 517, 532-533; 342 NW2d 591 (1983).
 

 The parties have filed cross motions for summary disposition. We conclude that the funding scheme employed in 1997 PA 142 and 1998 PA 339 complies with the Headlee Amendment. However, we hold that the per pupil funding guaranteed local and intermediate school districts to reimburse the costs of school operations by Proposal A (art 9, § 11) is constitutionally dedicated solely for reimbursement of general school operating expenses. Moreover, to the extent that the funding scheme employed in 1997 PA 142 and 1998 PA 339 restricts the use of that portion of art 9, § 11 per pupil funding attributed to special education pupils solely to the satisfaction of the state’s funding obligations for mandated programs, services, and transportation under Headlee, we hold that the State School Aid Acts violate the constitutional guarantee of a specific base level of unrestricted aid per pupil mandated by art 9, § 11. Accordingly, we grant summary disposition in favor of plaintiffs with regard to their claim of a violation of Proposal A (art 9, § 11) and grant declaratory relief. With regard to plaintiffs’ claim of a Headlee violation as set forth in count i of their amended complaint, we grant summary disposition in favor of the state.
 

 
 *192
 
 Plaintiffs’ complaint (count in) also alleges that the state has violated art 9, § 29 by underfunding school lunch programs for the 1997-98, 1998-99, 1999-2000, and 2000-01 school years. The state conceded at oral argument before this Court that it had underfunded the lunch programs. The Legislature passed a supplemental appropriations bill to remedy the underfunding. The Governor signed the bill on July 19, 1999. 1999 PA 119. Despite this supplemental appropriation, plaintiffs have filed a second amended complaint and have moved for summary disposition in regard to count Hi of that complaint. Plaintiffs seek a declaratory judgment holding that the school lunch program funding provided in subsection 31a(5) of the State School Aid Act, MCL 388.1631a(5); MSA 15.1919(931a)(5), does not constitute state funding for purposes of satisfying the state’s proportional share of the necessary costs of the state-mandated school lunch program and, consequently, that the state has violated art 9, § 29 by underfunding its share of the costs of the school lunch program in the amount authorized to be spent under subsection 31a(5). We hold that funding supplied through subsection 31a(5) can be used to satisfy the state’s proportional share of the necessary costs of the school lunch program under art 9, § 29. We further hold that the school districts have violated the mandate of subsection 31a(5) by failing to use from the funds supplied under subsection 31a(l) of the State School Aid Act, MCL 388.1631a(l); MSA 15.1919(931a)(l), an amount necessary to operate the school lunch programs. Accordingly, we grant summary disposition in favor of the state pursuant to MCR 2.116(I)(2).
 

 
 *193
 
 n
 

 The voters of Michigan amended our constitution by adopting article 9, §§ 25-34 of the Constitution of 1963 pursuant to an initiative petition, Proposal E, at the general election of November 7, 1978.
 
 Durant v Michigan (Durant I),
 
 456 Mich 175, 182; 566 NW2d 272 (1997);
 
 Schmidt v Dept of Ed,
 
 441 Mich 236, 244; 490 NW2d 584 (1992). These sections are popularly called the “Headlee Amendment,” named after its author and taxpayers’ rights crusader Richard Headlee.
 
 Durant I,
 
 456 Mich 182. The Headlee Amendment is the voters’ attempt to link funding, taxes, and control by limiting legislative expansion of requirements placed on local government, by freezing what they perceived was excessive government spending, and by lowering their taxes at both the state and the local levels.
 
 Durant,
 
 424 Mich 378, 383.
 

 The scheme of the Headlee Amendment is cogently summarized as follows in
 
 Durant I,
 
 456 Mich 182-183:
 

 The Headlee Amendment imposes on state and local government a fairly complex system of revenue and tax limits. These are summarized in art 9, § 25 and implemented in the following sections. There are three main elements. Section 26 limits any changes in total state revenues to an amount based on changes in personal income in the state. Section 31 prohibits units of local government from levying any new tax or increasing any existing tax above authorized rates without the approval of the unit’s electorate.
 

 The third element of the Headlee system is summarized in art 9, § 25, which states in part, “The state is prohibited from requiring any new or expanded activities by local governments without full state financing, from reducing the proportion of state spending in the form of aid to local governments, or from shifting the tax burden to local government.” These requirements are implemented in §§ 29 and 30.
 

 
 *194
 
 That part of the Headlee Amendment set forth in art 9, § 29, which is at issue in this case, provides in pertinent part as follows:
 

 The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law.
 

 Pursuant to art 9, § 29, the state is obligated to finance 28.6138 percent of the necessary costs of special education programs and activities offered by plaintiff school districts, 70.4165 percent of the necessary costs of the special education transportation provided by the districts and 6.0127 percent of the necessary costs of the school lunch program offered by the districts.
 
 Durant v Dep’t of Ed (After Remand, On Third Remand),
 
 213 Mich App 500, 504, 505; 541 NW2d 278 (1995), aff'd in part and modified in part 456 Mich 221.
 

 Since the adoption of the Headlee Amendment, the Legislature has appropriated funds to school districts pursuant to the State School Aid Act, MCL 388.1601
 
 et seq.)
 
 MSA 15.1919(901)
 
 et seq.,
 
 as amended annually.
 
 Schmidt,
 
 441 Mich 244. Between the enactment of the Headlee Amendment and the reforms in school financing made by the passage of 1993 PA 145 and the adoption of Proposal A at the general election on March 15, 1994, the State School Aid Act generally provided for two types of state funding: restricted (also referred to as categorical) and unrestricted.
 
 Durant I,
 
 456 Mich 202, 211, n 40;
 
 Schmidt,
 
 441 Mich 244-245;
 
 Durant v Dep’t of Ed (On Second Remand),
 
 186 Mich App 83, 89; 463 NW2d 461 (1990), aff'd 456 Mich 175; 566 NW2d 272 (1997); 1993 PA 145.
 
 *195
 
 Unrestricted aid constituted a general grant of funds, based in part on pupil membership in the school district, that could be used for any school-related purpose authorized by law such as teacher salaries, transportation, heating, and textbooks.
 
 Schmidt,
 
 441 Mich 244;
 
 Durant (On Second Remand),
 
 186 Mich App 89. Restricted or categorical aid constituted funds earmarked for specific programs, some of which are voluntarily provided by local school districts, and some of which are mandated by state law such as special education programs.
 
 Schmidt,
 
 441 Mich 244;
 
 Durant (On Second Remand),
 
 186 Mich App 90.
 

 Before the passage of 1993 PA 145 and the adoption of Proposal A, the State School Aid Act allocated unrestricted funds according to a formula that guaranteed each school district a minimum level of funding per pupil.
 
 Schmidt,
 
 441 Mich 244. Generally, the amount of unrestricted funds allocated per pupil equaled the difference between the amount guaranteed and the amount of per pupil funds generated by local revenues.
 
 Schmidt, supra.
 
 School districts were eligible to receive unrestricted funds only if the amount of locally generated per pupil revenue did not exceed the amount of funds guaranteed per pupil by the state.
 
 Schmidt, supra.
 
 School districts that were eligible for unrestricted aid were said to be “in-formula” districts.
 
 Schmidt, supra.
 
 School districts whose local per pupil revenues exceeded the state-guaranteed amount were ineligible for unrestricted aid and were said to be “out-of-formula” districts.
 
 Schmidt, supra
 
 244-245.
 

 The method of financing Michigan’s public schools changed radically with the passage of 1993 PA 145,
 
 *196
 
 which effectively eliminated the authority of school districts to levy millage on real property for local and intermediate school district operating expenses commencing with the 1994-95 school year and resulted in nearly $7 billion in lost revenues to fund school district budgets for the 1994-95 school year. 1993 PA 145, subsections 27a(3), (4); House Legislative Analysis, Senate Joint Resolution S, HB 4279, 5009-5010, 5097, 5102-5104, 5106, 5109-5112, 5115, 5116, 5118, 5120, 5129, 5224, March 1, 1994. Thereafter, the Legislature passed 1993 PA 336, which would fund school districts through an increase in the personal income and single business tax rate, the creation of a new real estate transfer tax, and the levying of a certain level of millage unless the electorate adopted a proposed amendment of the Michigan Constitution, commonly known as Proposal A, which would fund school districts, generally, on the basis of revenues generated by an increase in the state sales and use taxes, by a new real estate transfer tax, and by the levying of a certain level of millage, including a state-wide property tax of six mills assessed on all real and personal property subject to the General Property Tax Act and a millage of not more than eighteen mills on nonhomestead property. 1993 PA 336; House Legislative Analysis, Senate Joint Resolution S, March 1, 1994.
 

 In conjunction with the passage of 1993 PA 336, the Legislature adopted Enrolled Senate Joint Resolution S pursuant to which the Legislature submitted to the electorate a proposal to amend Const 1963, art 9, §§ 3, 5, 8, 10, and 11 and to add a § 36 to art 9, the effect of which would be a dedication of certain revenues to the State School Aid Fund and an increase in
 
 *197
 
 the sales and use taxes to generate revenue for that fund. The electorate adopted Proposal A at a statewide election by a sixty-nine to thirty-one percent margin.
 
 Durant I,
 
 456 Mich 203, 212, n 42; Luke,
 
 Voters Give Sales-Tax Hike for Schools A-Plus,
 
 The Grand Rapids Press, March 16, 1994, p A-l. Proposal A took effect on April 30, 1994.
 
 Durant I,
 
 456 Mich 203, 212, n 42.
 

 As amended by Proposal A, art 9, § 11 provides:
 

 There shall be established a state school aid fund which shall be used exclusively for aid to school districts, higher education, and school employees’ retirement systems, as provided by law. Sixty percent of all taxes imposed at a rate of 4% on retailers on taxable sales at retail of tangible personal property, 100% of the proceeds of the sales and use taxes imposed at the additional rate of
 
 2%
 
 provided for in section 8 of this article, and other tax revenues as provided by law, shall be dedicated to this fund. Payments from this fund shall be made in full on a scheduled basis, as provided by law. Beginning in the 1995-96 state fiscal year and each fiscal year after 1995-96, the state shall guarantee that the total state and local
 
 per pupil
 
 revenue for school operating purposes for each local school district shall not be less than the 1994-95 total state and local
 
 per pupil
 
 revenue for school operating purposes for that local school district, as adjusted for consolidations, annexations, or other boundary changes. However, this guarantee does not apply in a year in which the local school district levies a millage rate for school operating purposes less than it levied in 1994. [Emphasis added.]
 

 The
 
 per pupil
 
 funds guaranteed by art 9, § 11 are commonly referred to as the
 
 “foundation allowance.”
 
 1993 PA 336, subsection 20(1). The foundation allowance is a per pupil revenue amount that a school district receives, as calculated by a complicated formula set forth in the various public acts that appropriate
 
 *198
 
 school aid funding. For purposes of the fiscal years at issue in this case, the foundation allowance is funded from a combination of state aid and local property tax revenues, with the per pupil allowance for non-special education pupils being composed of both state and local revenues and the per pupil allowance for special education pupils being composed of only state revenues.
 
 Id.;
 
 1997 PA 142; 1998 PA 339. School districts are required by law to use the foundation allowance to fund “salaries and other compensation of teachers and other employees, tuition, transportation, lighting, heating, ventilation, water service, the purchase of textbooks . . . , other supplies, and any other school operating expenditures defined in section 7.” State School Aid Act of 1979, subsection 18(1), codified at MCL 388.1618(1); MSA 15.1919(918), as amended by 1993 PA 336, subsection 18(1); 1994 PA 283, subsection 18(1); 1995 PA 130, subsection 18(1); 1996 PA 300, subsection 18(1). Section 7 of the State School Aid Act of 1979 defines costs for school operating purposes as including “all expenditures necessary to carry out the powers of the district or intermediate district under the revised school code.” MCL 388.1607; MSA 15.1919(907). Additionally, 1997 PA 142 and 1998 PA 339 require school districts to use the foundation allowance revenues attributable to special education pupils to satisfy the state’s funding obligation for special education programs, services, and transportation.
 

 After our Supreme Court’s decision in
 
 Durant I,
 
 456 Mich 175,
 
 [4]
 
 and for the fiscal years at issue in this
 
 *199
 
 case, the Legislature funded K through 12 public school education through 1997 PA 142 and 1998 PA 339. Section 11 of these acts contains the total funding appropriation for K through 12 public school education. From § 11, the Legislature allocated the foundation allowance funding for non-special education pupils to § 20. 1998 PA 339, subsections 20(2), (13); 1997 PA 142, subsections 20(2), (13). Subsection 51a(1) of 1998 PA 339, amending 1997 PA 142, subsection 51a(1), allocates a portion of the state and federal funds appropriated in § 11 of these acts for each of the fiscal years at issue
 

 for the purpose of reimbursing districts and intermediate districts for special education programs, services, and special education personnel as prescribed in article 3 of the revised school code, MCL 380.1701 to MCL 380.1766 [MSA 15.41701 to MSA 15.41766]; net tuition payments made by intermediate school districts to the Michigan schools for the deaf and blind; and programs for pupils with handicaps as defined by the department.
 

 Subsection 51a(2) of the act then allocates a portion of the funds appropriated in § 11 and allocated to subsection 51a(l) of the acts for the purpose of satisfying the state’s funding obligation under art 9, § 29 with regard to special education activities and transportation. The funds allocated to subsection 51a(2) consist of the foundation allowance funding for special education pupils. 1998 PA 339, subsection 51a(2)(a); 1997 PA 142, subsection 51a(2)(a). Special education transportation is no longer funded separately under § 58. These public acts fund the foundation allowance in an amount that exceeds the base level of per pupil funding guaranteed by art 9, § 11.
 

 
 *200
 
 In 1997 PA 142, the Legislature also included an appropriation of approximately $212 million to pay the
 
 Durant I
 
 damage award. In addition, the Legislature has paid “in settlement” nearly $632 million to non
 
 -Durant
 
 school districts. Nonetheless, the current foundation allowance scheme that now funds all students “other than special education pupils” has been criticized by the plaintiffs and by some legislators as a funding shift—a “shell game”—that fails to comply with the Supreme Court’s decision in
 
 Durant I.
 
 In this regard, plaintiffs note:
 

 During the debate on the First Conference Report on HB 4310 comments entered into the record on the floor of the House are most revealing. Reps. McBiyde, Cropsey, Lowe and Goschka, who voted “Nay," offered the following:
 

 “We voted ‘No’ on the First Conference Report on HB 4310 because it takes the K-12 budget in the
 
 wrong direction
 
 in a number of ways:
 

 :|: * *
 

 5. it does not address the
 
 Durant
 
 decision regarding special education funding.” [1997 Journal of the House 1839 (No. 67, July 10, 1997) (emphasis in original).]
 

 Representative Kirk A. Profit made the following statement:
 

 Mr. Speaker and members of the House:
 

 We are committing a grave disservice to the Constitution of this state and to our constituents. Contrary to the published reports about the School Aid Bill, House Bill No. 4310, there is
 
 no
 
 additional funding being provided to local school districts under this bill in order to comply with the
 
 Durant
 
 decision of the Supreme Court. This is a charade which is occurring to deceive the Supreme Court into thinking that we are at last complying with the Constitution when, in fact, we have just re-shuffled the deck and shifted
 
 *201
 
 monies around to make it appear that additional money is being provided for special education. This is just a shell game.
 

 * :|5 *
 

 I submit to you my fellow legislators that almost 20 years of playing loose with the written words of the Constitution has to stop now. I urge that we vote against this bill and get down to the earnest business of complying with the Constitution. The people of Michigan had more in mind in 1978 than having us arbitrarily shuffling dollars around to comply with Section 29 of the Headlee Amendment.
 

 Therefore, I vote
 
 NO.
 
 [1997 Journal of the House 1840 (No. 67, July 10, 1997) (emphasis in original).]
 

 Representative Greg J. Kaza expressed a similar sentiment:
 

 Mr. Speaker and members of the House:
 

 This conference committee report is a cynical attempt by Lansing politicians to avoid their responsibility to schoolchildren under
 
 Durant v State of Michigan.
 

 In 1978, the people of Michigan approved the Headlee Amendment to the state Constitution. Among Headlee’s provisions was a prohibition against unfunded mandates by Lansing on local units of government, including school districts ....
 

 * * *
 

 For 16 long years the Lansing politicians ignored the people. They ignored the prohibition against unfunded mandates; they also ignored the local government claims review board that was established by Headlee. The board has met only once since the people amended the state Constitution in 1978 by passing Headlee. In the interim, nearly 500 local units have submitted claims that remain ignored.
 

 Earlier this year, during testimony before the state House Tax Policy Committee, Richard Headlee, the amendment’s author, testified “there are those in a position of political
 
 *202
 
 power in this state who have gone to great lengths to subvert and circumvent the will of the people.”
 

 In 1997, the state Supreme Court finally ruled against the state of Michigan in the
 
 Durant
 
 case by finding that certain education services axe mandated costs and must be settled under Headlee. Now that they have lost this case in court the Lansing politicians expect us to accept this report.
 

 The chair of the Tax Policy Committee, the representative from the 54th District, has done the people a great service by calling hearings on the willful subversion of the Headlee Amendment by Lansing politicians.
 

 In the spirit of bi-partisanship, I join with him today in voting against this conference report, which he correctly characterizes as “a charade.” [1997 Journal of the House 1840 (No. 67, July 10, 1997). ]
 

 In addition, Representatives Glenn S. Oxender and William R. Bobier explained their nay votes in pertinent part as follows:
 

 It is with regret that I voted no on the School Aid Bill (H.B. 4310). I have concerns that the new funding in the bill does not address the
 
 Durant
 
 decision. ... It was my hope that we could . . . finish the liability of the
 
 Durant
 
 decision. We missed a golden opportunity to help students and schools to a long term solution. [1997 Journal of the House 1840 (No. 67, July 10, 1997). ]
 

 In their brief, defendants acknowledge the funding shift, while arguing that the scheme complies with the Headlee Amendment and Proposal A:
 

 Under prior versions of the State School Aid Act, all of the state revenue for the foundation allowance was paid under section 20 of the State School Aid Act as unrestricted aid. Under 1997 PA 142 and 1998 PA 339, the Legislature changed the manner in which it appropriated state revenue
 
 *203
 
 to fund the foundation allowance. In both of those public acts, the Legislature chose to appropriate the state revenue for the foundation allowance of regular education “pupils” under section 20 as unrestricted aid and to appropriate the state revenue for the foundation allowance of special education “pupils” under section 51a as categorical aid.
 

 m
 

 A motion brought under MCR 2.116(C)(10) tests the factual basis for a claim.
 
 Nicita v Detroit (After Remand),
 
 216 Mich App 746, 750; 550 NW2d 269 (1996). This Court must review the pleadings, affidavits, and other documentary evidence submitted, make all reasonable inferences therefrom, and determine whether a genuine issue of material fact exists, giving the nonmoving party the benefit of every reasonable doubt.
 
 Maiden v Rozwood,
 
 461 Mich 109, 119-121; 597 NW2d 817 (1999);
 
 Quinto v Cross & Peters Co,
 
 451 Mich 358, 362; 547 NW2d 314 (1996).
 

 rv
 

 A
 

 Before we can reach the merits of the substantive questions posed, we must first address several challenges raised by the state to our exercise of jurisdiction in this matter.
 

 The state argues that this Court lacks subject-matter jurisdiction to entertain plaintiffs’ request for declaratory relief because plaintiffs’ claims fail to raise a case or actual controversy. According to the state, no case or actual controversy exists because the Legislature appropriated sufficient funds to satisfy
 
 *204
 
 the state’s art 9, § 29 funding obligations and incorporated into 1997 PA 142 and 1998 PA 339 a statutory mechanism commonly referred to as the “subsequent adjustment” provision by which the Department of Education can adjust a school district’s reimbursement under § 51a to guarantee that the state’s art 9, § 29 obligations are met. Even if plaintiffs could establish an underfunding of the state’s art 9, § 29 obligation, the state asserts that the Department of Education would use the subsequent adjustment provision to automatically make up the shortfall in the ensuing fiscal year. Accordingly, none of the plaintiffs will suffer an actual injury and, absent injury, no case or actual controversy exists.
 

 A court lacks subject-matter jurisdiction to enter a declaratory judgment in the absence of a case or actual controversy. MCR 2.605(A);
 
 McGill v Automobile Ass’n of Michigan,
 
 207 Mich App 402, 407; 526 NW2d 12 (1994). Generally, an actual justiciable controversy exists where a declaratory judgment is necessary to guide a plaintiff’s future conduct in order to preserve the plaintiff’s legal rights.
 
 Shavers v Att’y Gen'l,
 
 402 Mich 554, 588-589; 267 NW2d 72 (1978). “What is essential to an actual controversy is that plaintiff plead and prove facts which indicate an adverse interest necessitating a sharpening of the issues raised.”
 
 Fieger v Comm’r of Ins,
 
 174 Mich App 467, 470-471; 437 NW2d 271 (1988).
 

 The subsequent adjustment provision provides in part:
 

 If the department determines that the sum of the amounts allocated for a fiscal year to a district or intermediate district under subsection (2) (a) and (b) is not sufficient to fulfill the specified percentages in subsection (2),
 
 *205
 
 then the shortfall shall be paid to the district or intermediate district during the fiscal year beginning on the October 1 following the determination and payments under subsection (3) shall be adjusted as necessary. [1998 PA 339, subsection 51a(4).]
 

 This provision is intended to correct any miscalculation made by the Legislature when it estimated the amount of money that needed to be appropriated and allocated to cover the state’s art 9, § 29 funding obligations as demonstrated by standard accounting practices. This provision does not address the important constitutional questions of first impression raised in this case. The differing positions of the parties with regard to how the Legislature is to satisfy the state’s art 9, §§ 11 and 29 funding obligations raise an actual justiciable controversy for purposes of the declaratory judgment rule.
 

 The state also argues that a claim for declaratory relief under art 9, § 11 is outside the original jurisdiction conferred on this Court by art 9, § 32 for purposes of enforcing the provisions of the Headlee Amendment. The state asserts that claims regarding taxing provisions contained in the Michigan Constitution, other than those sections falling within the Headlee Amendment, must be brought in the first instance in the lower trial courts. We reject the state’s jurisdictional challenge in light of the September 29, 1998, order of our Supreme Court, in which the Court expressly stated that this Court has jurisdiction under art 9, § 32 to determine whether the funding scheme employed by the Legislature violates art 9, § 11 “because the gravamen of the action is a failure to comply with art 9, § 29.”
 

 
 *206
 
 In addition, we note that at oral argument and in their brief, defendants have conceded this issue. The state “acknowledges that the Supreme Court included language in its September 29, 1998, order in this case to the effect that this Court has jurisdiction.”
 

 B
 

 We now turn our attention to the substantive issues raised by plaintiffs. Plaintiffs argue that the state’s diversion of foundation allowance funding, which constitutes unrestricted revenues available for school operating purposes, to defray the costs of special education programs, services, and transportation is akin to the state’s former practice of using unrestricted “in-formula” aid to make up the shortfalls in categorical aid provided exclusively to defray the state’s proportional funding obligation for these mandated services, a practice that was “squarely rejected” by this Court,
 
 Durant (On Remand),
 
 129 Mich App 532-533, and our Supreme Court,
 
 Durant,
 
 424 Mich 391-392. Plaintiffs further argue that by diverting the foundation allowance funding the state has avoided paying for state-mandated services from its own revenue and, instead, is relying on the school districts’ revenues ostensibly guaranteed to them by art 9, § 11 to satisfy its funding obligations under art 9, § 29 in violation of the intent of the voters who ratified the Headlee Amendment. We are not persuaded by plaintiffs’ arguments.
 

 Plaintiffs correctly point out that this Court, as well as our Supreme Court, has ruled that the state may not reduce categorical aid reimbursing the necessary costs of special education and special education transportation below that proportion paid by the state
 
 *207
 
 in the 1978-79 fiscal year and then require underfunded school districts to alleviate the resulting deficiency through use of other outside funding, such as unrestricted aid.
 
 Durant,
 
 424 Mich 391-392;
 
 Durant (On Remand),
 
 129 Mich App 532-533. Such a practice violates the intent of the Headlee Amendment,
 
 Durant,
 
 424 Mich 392, and renders meaningless the rule that the state may not reduce the level of categorical aid that it provides for the necessary costs of services and activities required of school districts by state law,
 
 Durant (On Remand),
 
 129 Mich App 517.
 

 These cases, and the principles enunciated in them, are inapposite, however. Both prior
 
 Durant
 
 decisions stand only for the proposition that art 9, § 29 requires the Legislature to appropriate sufficient funds to adequately fund the state’s proportional funding obligation for state-mandated programs and services in the first instance; the state cannot force school districts to use unrestricted aid or any other moneys received in a given fiscal year to offset any underfunding of state-mandated programs. These decisions, however, do not address what revenue sources the Legislature may turn to, in the first instance, to fund the appropriations that satisfy the state’s art 9, § 29 funding obligations. Plaintiffs do not assert that special education services, programs, and transportation have been initially underfunded by the Legislature’s appropriations and allocations of State School Aid Fund money in 1997 PA 142 and 1998 PA 339. Instead, plaintiffs challenge the validity of the composition of the funds appropriated and allocated, asserting that the Legislature satisfied the state-mandated portion of the costs of special education services, programs, and transportation, in part, with moneys constitutionally dedicated
 
 *208
 
 to other purposes. The prior
 
 Durant
 
 decisions do not address such a challenge.
 

 Nor does the text of art 9, § 29 address such a challenge. The first two sentences of art 9, § 29 provide:
 

 The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law. A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the legislature or any state agency of units of Local Government for any necessary increased costs.
 

 Although these sentences address shifts in responsibility for funding services from state to local government, they “only guarantee [] that each local unit will receive the state-financed proportion of funding provided on a statewide basis in 1978.”
 
 Judicial Attorneys Ass’n v Michigan,
 
 460 Mich 590, 603; 597 NW2d 113 (1999); see also
 
 Schmidt,
 
 441 Mich 252, 256. They do not address, or in any way limit, the revenue sources from which the Legislature may draw money to finance school aid appropriations to satisfy the funding formula imposed by art 9, § 29. To conclude otherwise would be to limit the Legislature’s discretion in a manner not envisioned by the Headlee Amendment, and we may not construe a constitutional provision to impose limitations on the Legislature not intended by the ratifiers of the constitutional provision.
 
 Judicial Attorneys Ass’n,
 
 460 Mich 604-605;
 
 Durant I,
 
 456 Mich 192-193.
 

 For the reasons set forth above, we conclude that the funding scheme imposed by 1997 PA 142 and 1998 PA 339 does not violate the Headlee Amendment (art
 
 *209
 
 9, § 29) and, therefore, we grant summary disposition of this claim in favor of the state.
 

 c
 

 Next, plaintiffs argue that the funding scheme created by the State School Aid Acts (1997 PA 142 and as amended by 1998 PA 339) violates Proposal A (art 9, § 11).
 

 In essence plaintiffs’ argument is that the state violated the Michigan Constitution when it enacted 1997 PA 142 and 1998 PA 339 to allocate the revenues provided to school districts pursuant to Proposal A (art 9, § 11), in order to satisfy its independent funding obligation under Headlee (art 9, § 29). We agree.
 

 Plaintiffs assert that the common understanding of the ratifiers of Proposal A was that the phrase “per pupil revenue for school operating purposes” added to art 9, § 11 guaranteed to each school district a funding base premised on each student in attendance in the school district, without regard to whether the pupil received special education services, and that these guaranteed funds were to finance the various general educational activities and services that schools provide for all pupils in common. According to plaintiffs, these constitutionally guaranteed funds are distributed to plaintiff school districts as foundation allowance revenues. The Legislature allocates the foundation allowance revenues for special education pupils as categorical aid that is available solely for the purpose of funding special education services. Consequently, to the extent that the Legislature allocates the foundation allowance revenues for special education pupils as categorical aid, plaintiff school districts are deprived of the total unrestricted per
 
 *210
 
 pupil revenues guaranteed by art 9, § 11 because they only receive foundation allowance revenue for non-special education pupils as unrestricted aid. Accordingly, the allocation scheme employed in 1997 PA 142 and 1998 PA 339, which treats special education pupils differently from non-special education pupils for purposes of allocation of foundation allowance revenue, violates the voters’ intent to guarantee that the districts receive a specific amount of unrestricted aid per pupil and to provide school districts with funding independent of and in addition to categorical aid provided in order to satisfy the state’s art 9, § 29 funding obligations.
 

 At issue is the meaning of the following constitutional provision:
 

 There shall be established a state school aid fund which shall be used exclusively for aid to school districts ... , as provided by law. Sixty percent of all taxes imposed at a rate of 4% on retailers on taxable sales at retail of tangible personal property, 100% of the proceeds of the sales and use taxes imposed at the additional rate of 2% provided for in section 8 of this article, and other tax revenues provided by law, shall be dedicated to this fund. Payments from this fund shall be made in full on a scheduled basis, as provided by law. Beginning in the 1995-96 state fiscal year and each state fiscal year after 1995-96, the state shall guarantee that the total state and local
 
 per pupil
 
 revenue for school operating purposes for each local school district shall not be less than the 1994-95 total state and local
 
 per pupil
 
 revenue for school operating purposes for that local school district .... [Const 1963, art 9, § 11 (emphasis added).]
 

 The rule of “common understanding” is the primary rule of constitutional interpretation.
 
 Durant I,
 
 456 Mich 191-192;
 
 Soap & Detergent Ass’n v Natural
 
 
 *211
 

 Resources Comm,
 
 415 Mich 728, 745; 330 NW2d 346 (1982). This rule has been described as follows:
 

 “A constitution is made for the people and by the people. The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it. ‘For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding, and ratified the instrument in the belief that that was the sense designed to be conveyed.’ ”
 
 [Durant I,
 
 456 Mich 192, quoting 1 Cooley, Constitutional Limitations (8th ed), p 143.]
 

 Additionally, evidence concerning the common understanding of the voters may be ascertained from the “ ‘times and circumstances’ ” surrounding the ratification of the constitutional provision and the purposes sought to be accomplished.
 
 Durant I,
 
 456 Mich 192, quoting
 
 People v
 
 Harding, 53 Mich 481, 485; 19 NW 155 (1884);
 
 Soap & Detergent Ass’n,
 
 415 Mich 745. An instructive tool for ascertaining the circumstances surrounding the adoption of a constitutional provision is the intent of the drafters of the provision, the drafter in this case being the Legislature.
 
 House Speaker v Governor,
 
 443 Mich 560, 580-581; 506 NW2d 190 (1993);
 
 Committee for Constitutional Reform v Secretary of State,
 
 425 Mich 336, 341; 389 NW2d 430 (1986);
 
 Univ of Michigan Regents v Michigan,
 
 395 Mich 52, 60; 235 NW2d 1 (1975).
 

 The question presented for our resolution is, therefore, whether the great mass of the people would have understood the amendatory language of Proposal A to bar the Legislature from appropriating and
 
 *212
 
 allocating the per pupil funding guaranteed by art 9, § 11 to satisfy any portion of the state’s funding obligation under art 9, § 29. The most compelling and dispositive tool at our disposal for resolving this question is the intent of the drafters of Proposal A, as revealed through how the Legislature proposed and, in fact, implemented the amendatory language of art 9, § 11 through 1993 PA 336. Evidence that the Legislature intended special education programs, services, and transportation to be funded with reyenue other than that to be guaranteed by art 9, § 11 can be found in §§ 20, 51, and 58 of the act. In § 20 of the act, the Legislature allocated the per pupil funding to be guaranteed by Proposal A, if ratified by the voters, for the purpose of reimbursing the school districts for costs formerly covered by “in-formula” payments and certain categorical payments, not including payments for special education and special education transportation. 1993 PA 336, subsection 20(17). The Legislature funded special education and special education transportation in §§ 51 and 58, respectively, separately and with revenues other than the per pupil funding to be guaranteed by Proposal A. This public act was enacted several months before the voters of this state overwhelmingly ratified Proposal A and, therefore, served notice on the great mass of the people that if they ratified Proposal A then the “total state and local
 
 per pupil
 
 revenue” guaranteed by Proposal A would be provided to reimburse costs incurred for “school operating purposes” other than the costs incurred in providing special education services, programs, and transportation. Because the Legislature informed the voters before the election that the per pupil funding guaranteed by Proposal A would not be used to reim
 
 *213
 
 burse the costs of special education services, programs, and transportation, we conclude that the great mass of the people intended the amendatory language of Proposal A to guarantee to school districts unrestricted per pupil funding to reimburse general school operating costs exclusive of the costs of special education and special education transportation.
 

 For these reasons, we grant summary disposition in favor of plaintiffs with regard to this claim and declare the State School Aid Acts to be unconstitutional as violative of Proposal A. Our constitution prohibits the Legislature from using the per pupil funding guaranteed by Proposal A to satisfy the state’s obligations under the Headlee Amendment (art 9, § 29). Consequently, because the state may not fund its Headlee Amendment obligations in regard to special education programs, services, and transportation with the per pupil funding guaranteed by Proposal A, the state has underfunded those obligations in the amount of Proposal A funds dedicated to satisfying the state’s Headlee Amendment obligations.
 
 [5]
 

 
 *214
 
 Because of the separation of powers considerations addressed by both the majority and the dissenting opinion in
 
 Durant I,
 
 we deny plaintiffs’ request for mandamus, injunctive relief, and monetary damages. With regard to this issue, the
 
 Durant I
 
 majority stated, 456 Mich 205-206:
 

 Art 9, § 32 authorizes taxpayers to file suit in the Court of Appeals to enforce the provisions of § 29. As arduous as the proceedings in this case have been, we have succeeded in deciding many points of law that will guide future decisions. Thus, there is every reason to hope that future cases will be much more straightforward. We anticipate that taxpayer cases filed in the Court of Appeals will proceed to rapid decision on the issue whether the state has an obligation under art 9, § 29 to fund an activity or service. The Court of Appeals would give declaratory judgment on the obligation of the state. If there was such an obligation, we anticipate that the state would either comply with that obligation no later than the next ensuing fiscal year, unless it could obtain a stay from this Court, or remove the mandate. In such an instance, we anticipate that the obligation of the Court to enforce § 29 would not include any grant of money damages.
 

 In addition, we agree with the following statements of fundamental constitutional law as recited in Justice Brickley’s dissent, 456 Mich 229-230:
 

 The Court’s place is to interpret the law, not to guide, control, or direct the activities of the other branches of government. We must presume that the other branches of government, once informed of their constitutional duties, will
 
 *215
 
 execute them to the letter and spirit of the law. In the unfortunate event that they choose to diverge from their explicit constitutional obligations, the remedy must be political, not judicial.
 

 D
 

 Plaintiffs also argue that state funds allocated to school districts by the Legislature pursuant to MCL 388.1631a; MSA 15.1919(931a) (herein § 31a) do not constitute state funding for purposes of satisfying the state’s proportional share of the necessary costs of the state-mandated school lunch program within the meaning of art 9, § 29. We are unpersuaded by plaintiffs’ argument.
 

 Subsection 31a(l) contains an allocation of funds appropriated to finance the costs of providing services and programs to “at-risk” pupils. By employing line item appropriations, the Legislature directs the school districts with regard to how to spend the funds allocated in subsection 31a(l) in the various provisions of § 31a, including subsection 31a(5), which provides in pertinent part:
 

 A district or public school academy that receives funds under this section and that operates a school lunch program under section 1272a of the revised school code, MCL 380.1272a,
 
 shall use from the funds received under this section an amount, not to exceed $10.00 per pupil for whom the district
 
 or public school academy
 
 receives funds under this section, necessary to operate the school lunch program.
 
 (Emphasis added.)
 

 Plaintiffs argue that subsection 31a(5) violates art 9, § 29 because it allows the state to use the school districts’ funds to make up any shortfall in state funds
 
 *216
 
 provided exclusively to defray the state’s proportional obligation for the necessary costs of providing a school lunch program. Plaintiffs rely on
 
 Durant,
 
 424 Mich 391-392, and
 
 Durant (On Remand),
 
 129 Mich App 523-524, to support their position. Plaintiffs’ reliance on these cases is misplaced.
 

 As observed in section m B of this opinion, the cases relied on by plaintiffs stand for the proposition that the state may not reduce categorical aid funding the necessary costs of state-mandated programs below that proportion paid by the state in 1978-79 and then require underfunded school districts to alleviate the resulting deficiency through the use of other outside funding, such as unrestricted aid.
 
 Durant,
 
 424 Mich 391-392;
 
 Durant (On Remand),
 
 129 Mich App 532-533. In other words, to satisfy art 9, § 29, the state must adequately fund state-mandated programs and services in the first instance. Here, the Legislature allocated “categorical aid” in subsection 31a(1) in the first instance for the purpose of providing services for “at-risk” pupils. Subsection 31a(5) constitutes nothing more than an additional earmarking, or line item allocation, of the “categorical aid” for a specific categorical subprogram falling within the ambit of the larger categorical program. The
 
 Durant
 
 decisions relied on by plaintiffs do not address this factual situation and, therefore, do not preclude the Legislature from funding the state’s proportional share of the necessary costs of providing state-mandated school lunch programs, in part, in this manner. In fact, because art 9, § 29 addresses only a level of funding, because art 9, § 29 is concerned only that the state provide its proportional share of funding of the state-mandated activity,
 
 Schmidt,
 
 441 Mich 252, 256, and because
 
 *217
 
 school districts are not granted the constitutional prerogative of complete self-government within a general funding appropriation that would preclude the Legislature from making line item appropriations, compare W
 
 T Andrew Co, Inc v Mid-State Surety Corp,
 
 450 Mich 655, 662; 545 NW2d 351 (1996);
 
 Univ of Michigan Regents, supra;
 
 OAG, 1997-1998, No 6938, pp 26-31 (April 11, 1997), there is nothing in the language of art 9, § 29 that precludes the Legislature from funding the state’s proportional share of the necessary costs of the school lunch program by allocating funds from more than one provision within the State School Aid Act.
 

 The question then becomes how to credit the money allocated under subsection 31a(5) against the state’s proportional share of the necessary costs of providing state-mandated school lunch programs. Plaintiffs seek a ruling that the state is entitled to a credit only for the actual amount spent by the districts under subsection 31a(5). The state seeks a $10 per pupil credit.
 

 At issue is the meaning of the following language set forth in subsection 31a(5): “A district. . .
 
 shall use from the funds received under this section an amount, not to exceed $ 10.00 per pupil
 
 for whom the district . . . receives funds under this section,
 
 necessary to operate the school lunch
 
 program.” (Emphasis added.)
 

 The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature.
 
 Frankenmuth Mut Ins Co v Marlette Homes, Inc,
 
 456 Mich 511, 515; 573 NW2d 611 (1998). Where the statute is clear and unambiguous, judicial construction is precluded.
 
 Id.
 
 If reasonable minds can
 
 *218
 
 differ in regard to the meaning of a statute, then judicial construction is appropriate.
 
 Adrian School Dist v Michigan Public School Employees’ Retirement System,
 
 458 Mich 326, 332; 582 NW2d 767 (1998). If judicial construction is necessary, the Legislature’s intent must be gathered from the language employed, and the language must be given its ordinary meaning. Statutory language is given the reasonable construction that best accomplishes the purpose of the statute.
 
 Frankenmuth Mut, supra.
 

 Plaintiffs’ assertions that subsection 31a(5) affords school districts both the discretion to decide whether to expend any subsection 31a(l) funds on school lunch programs and the discretion to decide how much to spend, if the decision to spend any funds is made, lack textual support. Plaintiffs’ construction of subsection 31a(5) fails to consider all the language of the section, and, in particular, the phrase “necessary to operate the school lunch program.”
 

 The use of the word “shall” in the statute connotes a mandatory duty or requirement.
 
 Depyper v Safeco Ins Co of America,
 
 232 Mich App 433, 438; 591 NW2d 344 (1998). The mandatory duty imposed by subsection 31a(5) is the duty to use from the funds received under subsection 31a(l) “an amount . . . necessary to operate the school lunch program.” The phrase “not to exceed $10.00 per pupil” clearly and unambiguously qualifies the scope of this duty by establishing a flexible ceiling on the amount of the subsection 31a(l) funding that may be used to reimburse plaintiffs for the state’s proportional share of the costs of providing state-mandated school lunch programs. Because the section imposes a flexible ceiling on the amount of funds that may be used, it logically follows
 
 *219
 
 that the Legislature intended that the exact amount of funds to be expended must be determined by events outside § 31a, such as the underfunding of the necessary costs of the school lunch program in other provisions of the State School Aid Act. Accordingly, the language of subsection 31a(5) evinces an intent on the part of the Legislature that the school districts are required to expend subsection 31a(l) funds in satisfaction of the necessary costs of school lunch programs to the extent that those funds are needed to compensate for underfunding in other provisions of the State School Aid Act.
 

 Additional support for the proposition that the Legislature intended that the school districts must spend subsection 31a(5) funds in satisfaction of the necessary costs of the school lunch program can be found in subsection 31a(8), wherein the Legislature authorizes schools districts to use a hundred percent of the “at-risk” funds they receive to reduce the ratio of teachers to students in grades K through six, but only after first expending the funds necessary to operate the school lunch program.
 

 Although plaintiffs have supplied this Court with Department of Education forms that leave the reader of those forms with the impression that the school districts have the discretion to determine whether to expend subsection 31a(1) funds on the necessary costs of operating the school lunch program, and although this Court affords deference to an agency’s construction of a statute, the agency’s construction is not controlling and cannot be used to overcome that statute’s plain meaning.
 
 Western Michigan Univ Bd of Control v Michigan,
 
 455 Mich 531, 544; 565 NW2d 828
 
 *220
 
 (1997). The forms may not be used to thwart the plain meaning of subsection 31a(5).
 

 Plaintiffs’ claim that the state is entitled to a credit only for the actual amount spent by the districts under subsection 31a(5) on the necessary costs of the school lunch program also fails.
 

 Under art 9, § 29, the state-financed proportion of the necessary costs of the school lunch program for each fiscal year is 6.0127 percent.
 
 Durant (After Remand, On Third Remand),
 
 213 Mich App 504, 505, aff’d in part and modified in part 456 Mich 175. Subsection 31a(5) requires the school districts to use § 31a funds to satisfy the state’s proportion of the necessary costs of the school lunch program. To the extent that the state failed to fully fund this obligation in other provisions of the State School Aid Act, subsection 31a(5) required the school districts to make up that underfunding with § 31a funds in an amount not to exceed $10 per “at-risk” pupil. Because plaintiffs concede that the state underfunded its portion of the necessary costs of providing school lunch programs in virtually every school district by more than $10 per pupil and because subsection 31a(5) mandates that each school district use § 31a funds to defray the necessary costs of school lunch programs in an amount up to $10 per “at-risk” pupil, the school districts were required by subsection 31a(5) to use a full $10 per “at-risk” pupil of the subsection 31a(1) funds to make up the state’s program underfunding in other provisions of the act. The school districts failed to honor their statutory mandate.
 
 [6]
 
 Instead, the school
 
 *221
 
 districts redirected funds earmarked to satisfy the state’s financing obligations under art 9, § 29. Under such circumstances, the state should be credited with a full $10 per “at-risk” pupil as if the school districts had complied with their statutory mandate. To conclude otherwise would both reward the school districts for violating subsection 31a(5) and punish the taxpayers by requiring the state to appropriate additional tax revenue to reimburse the school districts for the funds misspent.
 

 For the reasons set forth above, we grant summary disposition in favor of the state pursuant to MCR 2.116(1)(2).
 

 v
 

 Plaintiffs may tax costs and reasonable attorney fees as allowed by art 9, § 32.
 
 Macomb Co Taxpayers Ass’n v Danse Creuse Public Schools,
 
 455 Mich 1, 6-10; 564 NW2d 457 (1997);
 
 Durant (On Second Remand),
 
 186 Mich App 118-119.
 

 [1]
 

 On remand, Judge Griffin has been substituted for Chief Judge (now Justice) Corrigan and Judge Jansen for Judge Mackenzie (now retired).
 

 [2]
 

 In its entirety, the order of the Court of Appeals stated:
 

 The Court orders, pursuant to MCR 7.206(D)(3), that the complaint is dismissed, without prejudice, for failure of plaintiffs to pursue the case in conformity with the rules, MCR 7.216(A)(10). Although the complaint properly identifies the applicable base year funding percentage for each State-mandated activity at issue, as required by
 
 Schmidt v Dep’t of Education,
 
 441 Mich 236, 252-253; 490 NW2d 584 (1992), it makes only conclusory allegations as to funding shortfalls for the two fiscal years at issue. However, in order for plaintiffs to establish a prima facie case under Const 1963, art 9, § 29, they must first allege the actual costs of providing such mandated activities for each individual school district identified as a plaintiff, and for each mandated service at issue; that would then shift the burden to the defendants of proving either that such costs were not actually incurred or that such costs were not necessary costs as defined in
 
 Durant v State Bd of Education,
 
 424 Mich 364; 381 NW2d 662 (1985).
 
 Durant v State Bd of Education (After Remand, Third Remand),
 
 213 Mich App 500, 503; 541 NW2d 278, aff’d with modification 456 Mich 175; 566 NW2d 272 (1997). Plaintiffs, however, have identified neither the funds budgeted for such mandated activities by the Legislature nor the costs for each district, or the maimer in which such costs were determined as to each school district; conclusory allegations of an aggregate amount fail to fulfill the requirement of MCR 2.111(B)(2).
 
 York v 50th District Court,
 
 212 Mich App 345; 536 NW2d 891 (1995);
 
 Reinink v VanLoozenoord,
 
 370 Mich 121; 121 NW2d 689 (1963).
 

 This dismissal is without prejudice to the otherwise timely filing of a new complaint, individually as to each school district, otherwise complying with the pleading requirements of MCR 7.206(A), incorporating by reference MCR 2.111-2.114. If in any such future complaints plaintiffs challenge the funding levels for a future fiscal year, plaintiffs shall plead facts establishing a nonspeculative basis for concluding that necessary costs for any plaintiff school district can be calculated, and a basis for concluding that the Legislature will fail to provide funding at that level by the end of the relevant fiscal year.
 

 
 *189
 
 We do not retain jurisdiction.
 

 [3]
 

 3 Plaintiffs’ original complaint requested the following relief in paragraph A:
 

 A declaratory judgment, declaring that the defendant state has failed through 1997 PA 142 to meet its duty pursuant to Const 1963, art 9, § 29 to fund services and activities provided by local school districts in Michigan during the 1997-98 and 1998-99 school years as required by state law in the same proportion by which they were funded when Const 1963, art 9, §§ 25-34 was ratified by the people of Michigan. More specifically, Plaintiffs pray that this Court declare that funds appropriated by the Michigan legislature through 1997 PA 142 to meet its funding responsibility pursuant to Const 1963, art 9, § 11 cannot be subsequently utilized to meet its independent funding responsibilities imposed by Const 1963, art 9, § 29.
 

 The relief requested in paragraph A of plaintiffs’ second amended complaint is verbatim, except that a declaratory ruling regarding 1998 PA 339 and 1999 PA 119 is included. Also “local school districts” has been changed to “local and intermediate school districts” and the “1999-2000” and “2000-2001” school years added.
 

 [4]
 

 Absent the remedy, the decision of the Supreme Court was announced in a June 10, 1997, order.
 
 Durant v Michigan,
 
 454 Mich 1219 (1997).
 

 [5]
 

 Our decision recognizes a significant obstacle to the Legislature’s exercise of its inherent discretion to appropriate and allocate funds. We acknowledge the admonition of our Supreme Court that legislative discretion may not be hampered in ways not contemplated by our constitution.
 
 Judicial Attorneys Ass’n,
 
 460 Mich 604-607. Our construction of art 9, § 29 in section in b and of art 9, § 11 in section m c of this opinion honors this admonition. Section m b of our opinion acknowledges that the Headlee Amendment intended no restriction on the exercise of legislative discretion in regard to the selection of revenue sources from which the funding obligations imposed by art 9, § 29 could be satisfied. Our conclusion is consistent with the narrow interpretation accorded § 29 by our Supreme Court in
 
 Judicial Attorneys Ass’n, supra.
 
 Moreover, although in section m c of our opinion we recognize a limitation to the Legislature’s discretion to appropriate and allocate revenues, this restriction is not found in art 9, § 29, but in art 9, § 11. Because this restriction is found in art 9, § 11, it cannot be said that we have limited the Legislature’s discre
 
 *214
 
 tion beyond that intended by the constitution. Instead, as revealed by the compelling legislative history surrounding the adoption and implementation of Proposal A, it was the drafters of Proposal A who restricted legislative discretion.
 

 [6]
 

 Plaintiffs concede that in the 1997-98 fiscal year only 147 of 580 school districts used subsection 31a(l) funds to defray the costs of pro
 
 *221
 
 viding school lunches. These school districts expended a total of $424,077 of subsection 31a(l) funds on school lunches during that fiscal year.