Talbot, J.
Plaintiffs, who have commenced this original action under Const 1963, art 9, § 32, MCR 2.605, and MCR 7.216(A)(7), seek a declaratory judgment that the state has failed to honor its funding obligations under the second sentence of Const 1963, art 9, § 29 with regard to certain activities and services that state law obligates plaintiff school districts to provide. Defendants have moved for summary disposition with regard to all counts. We hold that those plaintiff districts who participated in the Durant I litigation (hereafter explained), and the taxpayer plaintiffs who currently represent them, are barred from prosecuting their claims, with one exception, by the doctrine of res judicata. We further hold that the remaining plaintiff districts, all of whom executed a statutory release pursuant to MCL 388.161H and the taxpayer plaintiffs representing them, are barred from pursuing these same claims by the principle of re *693 lease. Finally, with regard to plaintiffs’ record-keeping claim set forth in ¶ 22K of count m of their second amended complaint, we hold that neither MCL 388.1752 nor Executive Order No. 2000-6, promulgated on July 28, 2000, as Executive Order No. 2000-9, effective September 28, 2000, mandates a new activity or increases the level of a state-mandated activity within the meaning of art 9, § 29. Accordingly, we grant summary disposition in favor of the defendants and dismiss plaintiffs’ complaint in its entirety with prejudice.
i
HEADLEE AMENDMENT
Michigan voters amended the constitution of this state by ratifying article 9, §§ 25-34 of the Constitution of 1963 pursuant to an initiative petition at the general election of November 7, 1978. Durant v Michigan (On Remand), 238 Mich App 185, 193; 605 NW2d 66 (1999). These added sections are popularly and collectively known as the “Headlee Amendment,” named after the amendment’s original proponent and taxpayers’ rights crusader, Richard Headlee. Voters intended the Headlee Amendment to limit legislative expansion of requirements placed on local government spending, to limit excessive government spending, and to lower taxes at both the state and local levels. Airlines Parking, Inc v Wayne Co, 452 Mich 527, 532; 550 NW2d 490 (1996); Mahaffey v Attorney General, 222 Mich App 325, 341; 564 NW2d 104 (1997). Essentially, those who ratified the Headlee Amendment sought to prevent the Legislature from enacting ever-increasing state laws and regulations *694 that create financial burdens on local units of government, unaccompanied by any financial support to alleviate those burdens. Durant v Dep’t of Ed (On Remand), 129 Mich App 517, 525; 342 NW2d 591 (1983), aff’d in part and rev’d in part 424 Mich 364; 381 NW2d 662 (1985).
The Headlee Amendment provision at issue in this case, art 9, § 29, provides:
The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law. A new activity or service or an increase in the level of any activity or service beyond that required by existing law shah not be required by the legislature or any state agency of units of Local Government, unless a state appropriation is made and disbursed to pay the unit of Local Government for any necessary increased costs. The provision of this section shall not apply to costs incurred pursuant to Article VI, Section 18.
The first sentence of art 9, § 29 is commonly referred to as the “Maintenance-of-Support Clause” (mos clause). Durant v Michigan, 456 Mich 175, 181; 566 NW2d 272 (1997). The second sentence is a Prohibition-of-Unfunded-Mandates Clause (POUM clause). Wayne Co Chief Executive v Governor, 230 Mich App 258, 265-266; 583 NW2d 512 (1998). The parameters of art 9, § 29 have been cogently articulated as follows:
“The first sentence of this provision prohibits reduction of the state proportion of necessary costs with respect to the continuation of state-mandated activities or services. The second sentence requires the state to fund any additional necessary costs of newly mandated activities or services and increases in the level of such activities or services from the 1978 base year. This language does not guarantee *695 that local units’ spending levels will not increase from the 1978 level. Rather, the Headlee Amendment only guarantees that the state will not reduce its proportion of the necessary costs of existing activities or services, and that the state will pay entirely for necessary costs when it mandates new activities or services or to the extent the state increases the level of an existing activity or service. Increased levels of local spending attributable to other causes, e.g., inflation or the greater utilization of a program by the public, are not addressed by this provision of the Headlee Amendment.” [Judicial Attorneys Ass’n v Michigan, 460 Mich 590, 595; 597 NW2d 113 (1999), quoting Mayor of Detroit v Michigan, 228 Mich App 386, 396-397; 579 NW2d 378 (1998), aff’d in part and vacated in part 460 Mich 590; 597 NW2d 113 (1999) (emphasis added).]
This action is brought pursuant to the poum clause.
DURANT I LITIGATION
Less than two years after the ratification of the Headlee Amendment, seven taxpayers residing in the Fitzgerald School District filed suit on May 7, 1980, on behalf of themselves and the Fitzgerald School District, under § 32 of the Headlee Amendment. Durant, supra, 456 Mich 184; Durant, supra, 424 Mich 379. The suit named the Department of Education, the Department of Management and Budget, and the State Treasurer as the defendants. The plaintiffs claimed a violation of the mos clause of art 9, § 29, alleging that the state was violating its duty to maintain the state-financed proportion of the necessary costs of activities that state law ordered the plaintiff school district to perform. Durant, supra, 456 Mich 184. This suit became popularly known as the Durant I litigation. During the seventeen years that the Durant I litigation remained active, this Court consol *696 idated the original Durant suit with thirty-four additional suits brought by numerous taxpayers and local and intermediate school districts, all of which alleged violations of art 9, § 29. Durant, supra, 456 Mich 186, 188. Although the vast majority of the claims advanced in these additional suits were premised on a violation of the mos clause, some plaintiffs also advanced claims premised on a violation of the POUM clause.[1] In 1997, our Supreme Court resolved the Durant I litigation in favor of the plaintiffs by granting a declaratory judgment and awarding monetary damages to the plaintiff school districts for the full amount of underfunding experienced by each plaintiff district during the 1991-92, 1992-93, and 1993-94 school fiscal years resulting from the state’s violation of art 9, § 29. Durant, supra, 456 Mich 182, 206.
POST-DURANT RELEASES
Following this award of monetary relief, our Legislature enacted, and our Governor signed, legislation appropriating a certain amount of funds to be paid to those local and intermediate school districts that were not plaintiffs in the Durant I litigation in “settlement and compromise of any claim or claims that were or could have been asserted by these districts and intermediate districts” in the Durant I litigation. MCL 388.1611f(l), (2), (4). The receipt of funds appropriated under this legislation was conditioned on the local and intermediate school districts providing the State Treasurer with a board resolution by March 2, 1998,
*697 waiving any right or interest the district or intermediate district has or may have in any claim or litigation based on or arising out of any claim or potential claim through September 30, 1997 that is or was similar to the claims asserted by the plaintiffs in the consolidated cases known as Durant v State of Michigan.” [MCL 388.1611f(l), (2).]
The text of this resolution was established by statute as follows:
“Whereas, the board of_ (name of district or intermediate district) desires to settle and compromise, in their entirety, any claim or claims that the district (or intermediate district) has or had for violations of section 29 of article IX of the state constitution of 1963, which claim or claims are or were similar to the claims asserted by the plaintiffs in the consolidated cases known as Durant v State of Michigan, Michigan supreme court docket no. 104458-104492.
Whereas, the district (or intermediate district) agrees to settle and compromise these claims for the consideration described in sections Ilf and llg of the state school aid act of 1979, 1979 PA 94, MCL 388.161If and 388.161lg, and in the amount specified for the district (or intermediate district) in section llh of the state school aid act of 1979, 1979 PA 94, MCL 388.161lh.
Whereas, the board of_(name of district or intermediate district) is authorized to adopt this resolution.
Now, therefore, be it resolved as follows:
1. The board of_(name of district or intermediate district) waives any right or interest it may have in any claim or potential claim through September 30, 1997 relating to the amount of funding the district or intermediate district is, or may have been, entitled to receive under the state school aid act of 1979, 1979 PA 94, MCL 388.1601 to 388.1772, or an other source of state funding, by reason of the application of section 29 of article IX of the state constitution of 1963, which claims or potential claims are or were similar to the claims asserted by the plaintiffs in the consol *698 idated cases known as Durant v State of Michigan, Michigan supreme court docket no. 104458-104492.
4. This resolution is contingent on continued payments by the state each fiscal year as determined under sections Ilf and llg of the state school aid act of 1979, 1979 PA 94, MCL 388.1611f and 388.1611g. However, this resolution shall be an irrevocable waiver of any claim to amounts actually received by the school district or intermediate school district under sections Ilf and llg of the state school aid act of 1979.” [MCL 388.161If(8).]
Three hundred eighty-two of the local and intermediate school districts named as plaintiffs in this suit adopted the statutorily prescribed resolution, forwarded the executed resolutions to the State Treasurer within the requisite period, and received settlement payments.
CURRENT LITIGATION
Plaintiffs allege in count I of their complaint that, by operation of a variety of administrative rules enacted between 1979 and 1995, the state has mandated that they provide a variety of new special education activities and services for which the state has failed to provide the necessary funding required by the POUM clause of art 9, § 29. These alleged new activities and services include, but are not limited to, the provision of certain “transitional services for special education students,” certain “adaptive devices,” programmatic staffing, a director of special education services, and certain “specialized” services for autistic children. Plaintiffs further allege in count I that, by operation of other administrative rules, the state has mandated an increase in the level of staffing neces *699 sary to provide existing activities and services and that the state has also failed to reimburse the necessary costs of providing these mandates as required by the poum clause.
In count n of their complaint, plaintiffs allege that, pursuant to MCL 380.1284, the state has increased the level of existing activities and services required of plaintiff districts and agencies by increasing the number of hours of pupil instruction required for each school year. Plaintiffs allege that as of December 23, 1978, the state mandated a minimum of nine hundred hours of pupil instruction. Plaintiffs further allege that, by subsequent statutory enactment, the state has increased the number of mandated pupil instruction hours to 1,104 for the 2000-01 school year, to 1,110 for the 2001-02 school year, to 1,116 for the 2002-03 school year, to 1,122 for the 2003-04 school year, to 1,128 hours for the 2004-05 school year, to 1,134 hours for the 2005-06 school year, and to 1,140 hours for the 2006-07 school year and each succeeding school year. Plaintiffs allege that the state has faded to allocate funding to satisfy the necessary costs of providing the additional hours of pupil instruction.
Finally, plaintiffs allege in count III of then-amended complaint that, by statutory enactment and executive order, the state has mandated an increase in the level of the following activities and services without providing the requisite additional funding required by art 9, § 29: (1) an annual financial records audit by a certified public accountant for intermediate school districts;[2] (2) the instruction of students *700 regarding dangerous conununicable diseases; (3) specialized training for teachers regarding human immunodeficiency virus infection and acquired immunodeficiency syndrome; (4) the provision of a breakfast program; (5) the annual development and implementation of a three- to five-year school improvement plan; (6) the development of a continuing school improvement process; (7) the provision of a core academic curriculum; (8) the administration of state assessment tests to high school pupils; (9) the provision of remedial educational services and periodic retesting for pupils who fail the required assessment tests; (10) the accreditation of school buildings; (11) the provision of “learning processes” and special and sufficient assistance to each pupil in order to enable each pupil to achieve a state-endorsed diploma; (12) the provision of summer school classes for pupils who fail to meet standards for basic literacy skills or basic mathematics skills by the end of the third grade year;* *[3] (13) the provision of a minimum of four days of “teacher professional development” in the 2000-01 school year and a minimum of five days in the 2001-02 school year and each subsequent school year; (14) the creation and maintenance of data on “essential student data elements” and the transmission of this data through the Internet in a standardized form to the Department of Education *701 (this alleged mandate is referred to throughout this opinion as the record-keeping obligation in ¶ 22K of count m of plaintiffs’ second amended complaint); and (15) the provision of compensation to school bus drivers for time spent attending various training and tests.
The state has moved for summary disposition pursuant to MCR 2.116(C)(7) and (10). The state argues that it is entitled to summary disposition pursuant to MCR 2.116(C)(7) on the basis of the doctrine of res judicata. According to the state, all plaintiff districts before us who were also plaintiffs in the Durant I litigation could have raised their claims, with the exception of the record-keeping claim, in that prior litigation through an exercise of reasonable diligence. Plaintiffs respond that the doctrine of res judicata has no application in this action. All claims expressly resolved on the merits in the Durant I litigation concerned the MOS clause of art 9, § 29 whereas this action only advances claims under the poum clause. Plaintiffs further respond that the doctrine has no application because (1) they are not seeking a monetary judgment in this suit for the period covered by our Supreme Court’s decision in Durant I, (2) factual evidence different from that introduced in the Durant I litigation is required to resolve their claims under the POUM clause, and (3) not all the plaintiffs who are parties to this suit were parties to the Durant I litigation.
The state further argues that it is entitled to summary disposition pursuant to MCR 2.116(C)(7) for the reason that those plaintiffs who executed a statutory release pursuant to MCL 388.161If, and the taxpayer plaintiffs who represent them, are barred from pursuing their claims, with the exception of the record- *702 keeping claim, by the principle of statutory release. Plaintiffs respond that their claims are not barred by the releases executed pursuant to MCL 388.161 If. They allege that the releases apply only to issues that are “similar” to those advanced in the Durant I litigation and that the issues advanced in this action are not “similar” to those advanced and decided in the Durant I litigation within the meaning of the statute. Additionally, plaintiffs argue that their claims address instances of unfunded mandates that arose after the execution of the releases and that the executed releases cannot affect the parties’ rights that had not yet “matured” at the time of execution.
Finally, the state argues that it is entitled to summary disposition with regard to the record-keeping claim because the obligations identified both in an amendment of MCL 388.1752 and in Executive Order 2000-6 do not constitute an activity or service within the meaning of the poum clause. In the alternative, the state argues that as a matter of law neither MCL 388.1752 nor Executive Order 2000-6 increases the level of an existing activity or service beyond the level required in 1978 within the meaning of the poum clause. Plaintiffs respond that the record-keeping obligation does constitute an activity within the meaning of the poum clause.
n
STANDARD OP REVIEW
A motion for summary disposition brought under MCR 2.116(C)(7) based on release or res judicata requires this Court to accept as true the well-pleaded allegations of the plaintiffs and to construe them in *703 favor of the plaintiffs, unless specifically contradicted by the affidavits or other appropriate documentation submitted by the movant. Horace v Pontiac, 456 Mich 744, 749; 575 NW2d 762 (1998); Sewell v Southfield Public Schools, 456 Mich 670, 674; 576 NW2d 153 (1998); Baks v Moroun, 227 Mich App 472, 477, n 2; 576 NW2d 413 (1998). If the pleadings demonstrate that a party is entitled to judgment as a matter of law, or if the affidavits or other documentary evidence show that there is no genuine issue of material fact, judgment must be rendered without delay. Id. In re Beglinger Trust, 221 Mich App 273, 275-276; 561 NW2d 130 (1997). If no material facts are in dispute, then whether the movant is entitled to summary disposition is a question of law. Baks, supra.
A motion for summary disposition brought under MCR 2.116(C)(10) requires this Court to review the pleadings, affidavits, and other documentary evidence submitted, make all the reasonable inferences therefrom, and determine whether a genuine issue of material fact exists, giving the nonmoving party the benefit of the reasonable doubt. Bertrand v Alan Ford, Inc, 449 Mich 606, 617-618; 537 NW2d 185 (1995).
RES JUDICATA
We hold that the plaintiff districts involved in the prior Durant I litigation, and the taxpayer plaintiffs now representing them, are precluded by the doctrine of res judicata from prosecuting all but the record-keeping claim advanced in ¶ 22K of count hi. Consequently, we grant summary disposition pursuant to MCR 2.116(C)(7) to the state with regard to these claims.
*704 Res judicata bars a second, subsequent action when (1) the prior action was decided on the merits, (2) the decree in the prior action was a final decision, (3) both actions involve the same parties or their privies, and (4) the matter in the second case was or could have been resolved in the first. Ditmore v Michalik, 244 Mich App 569, 576; 625 NW2d 462 (2001). This doctrine applies equally to facts and law. Jones v State Farm Mut Automobile Ins Co, 202 Mich App 393, 401; 509 NW2d 829 (1993). Michigan courts broadly apply this doctrine to bar not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not. Dart v Dart, 460 Mich 573, 586; 597 NW2d 82 (1999). A party is obligated to advance in a single proceeding every alternative basis for relief and the party’s failure to do so bars relitigation of the claim. Energy Reserves, Inc v Consumers Power Co, 221 Mich App 210, 217; 561 NW2d 854 (1997).
Plaintiffs conceded during oral argument that all claims alleged in their second amended complaint, except the record-keeping claim, could have been raised during the course of the seventeen-year Durant I litigation. Accordingly, the application of res judicata in this case hinges on a determination that the claims now asserted have their genesis in the same transaction as those claims raised in the Durant I litigation. The test for determining whether two claims arise from the same transaction for res judicata purposes is whether the same facts or evidence is essential to the maintenance of the two actions. Jones, supra at 401. “Whether a factual grouping constitutes a ‘transaction’ for purposes of res judicata is *705 to be determined pragmatically, by considering whether the facts are related in time, space, origin or motivation, whether they form a convenient trial unit . . . 46 Am Jur 2d, Judgments, § 533, p 801. Additionally, when applying the same transaction test, “it must be borne in mind that the number and variety of the facts alleged do not establish more than one cause of action within the rule of res judicata, as long as their result, whether they are considered severally or in combination, is a violation of but one right by a single legal wrong.” Id., § 534, p 803. See Baltimore S S Co v Phillips, 274 US 316, 321; 47 S Ct 600; 71 L Ed 1069 (1927); Tomiyasu v Golden, 81 Nev 140, 142-143; 400 P2d 415 (1965).
The instant declaratory judgment action, as well as the action in Durant I, were brought pursuant to Const 1963, art 9, § 32, which authorizes a suit to enforce the provisions of §§ 25 through 31, inclusive. The gravamen of all the claims raised in Durant I, and alleged in the instant action, is a violation of art 9, § 29. In other words, although the claims raised in Durant I arise from different government actions and omissions and under a different clause of art 9, § 29, the gravamen of each suit is the violation of but one primary right of plaintiffs, namely, the right to be adequately funded by state appropriations as required by the constitution of this state. The number and variety of facts proved in Durant I and alleged in the instant action, as well as differing and multiple theories advanced in Durant I as compared to the instant action, are of no import for purposes of an application of res judicata where, whether they are considered severally or in combination, their result is the violation of the same single right. Baltimore S S Co, *706 supra at 321. Accordingly, because Durant I and the instant action address the violation of the same legal right and because the claims advanced in the instant action accrued during the Durant I litigation, we conclude that these claims arise from the same transaction for purposes of res judicata.
Having concluded that these claims arise from the same transaction as those advanced in the Durant I litigation, we further conclude that, through an exercise of reasonable diligence, plaintiffs could have raised their instant claims in the prior litigation, as indicated by the fact that several of the plaintiffs in the Durant I litigation did allege violations of the POUM clause. Under these circumstances, we hold that res judicata bars these plaintiffs from pursuing all but the record-keeping claim.
Accordingly, we grant the state summary disposition pursuant to MCR 2.116(C)(7) with regard to these plaintiffs. We also grant summary disposition pursuant to MCR 2.116(C)(7) in favor of the state and against those taxpayer plaintiffs who represent these plaintiffs. For purposes of litigation arising out of § 29 of the Headlee Amendment, plaintiff taxpayers effectively represent the interests of these plaintiffs and, thus, must be treated as one and the same with these plaintiffs and accorded no greater rights. See, e.g., Wayne Co Chief Executive, supra at 271.
RELEASE
We further hold that the plaintiff districts who executed a statutory release pursuant to MCL 388.161If and the taxpayer plaintiffs who now represent them are precluded by these releases from prosecuting all *707 but the record-keeping claim. Consequently, we grant summary disposition in favor of the state with regard to these claims pursuant to MCR 2.116(C)(7).
A contract may arise from legislation if the language and the circumstances demonstrate a clear expression of legislative intent to create rights of a contractual nature. In re Certified Question (Fun ‘N Sun RV, Inc v Michigan), 447 Mich 765, 777-778; 527 NW2d 468 (1994). Neither party questions the authority or intent of our Legislature to create contractual rights pursuant to MCL 388.161If. Nor do the parties question the validity of the various releases executed by the releasing plaintiffs or the ability of the releasing plaintiffs to release liability for unconstitutional acts.[4] See 66 Am Jur 2d, Release, § 3, p 372; see also Romska v Opper, 234 Mich App 512, 516; 594 NW2d 853 (1999) (there is no rule of law in Michigan that precludes settling piarties from waiving whatever rights they choose). Rather, the parties question the scope of the releases.
The scope of a release is governed by the intent of the parties as expressed in the release. Collucci v Eklund, 240 Mich App 654, 658; 613 NW2d 402 (2000). If the text of the release is unambiguous, the parties’ intentions must be ascertained from the plain, ordinary meaning of the language of the release. Id. A release is ambiguous only if its language is reasonably susceptible to more than one interpretation. Cole v Ladbroke Racing Michigan, Inc, 241 Mich App 1, 13; *708 614 NW2d 169 (2000). The fact that the parties offer competing interpretations of a release does not, in itself, establish an ambiguity. Id. at 14.
Here, we find that the language of the statutory release is clear and unambiguous. By its terms, the release expressly applies to “any claim or potential claim” arising from a violation of art 9, § 29 and existing on or before September 30, 1997, which is or was “similar to the claims asserted by the plaintiffs in the consolidated cases known as Durant v State of Michigan, Michigan supreme court docket no. 104458-104492.” Plaintiffs concede that the government mandates that they allege are unfunded in violation of the poum clause, with the exception of the record-keeping mandate identified in count m, ¶ 22K of their second amended complaint, existed before September 30, 1997, and, hence, that the alleged underfunding predates the execution of the releases. An action for declaratory relief to resolve the prospective rights and obligations of the parties under the poum clause of art 9, § 29 accrues upon the issuance of the unfunded government mandate, regardless of whether the underfunding has occurred. See Oakland Co v Michigan, 456 Mich 144, 151, n 4; 566 NW2d 616 (1997); Wayne Co Chief Executive, supra at 266-267. Accordingly, all claims advanced by the district plaintiffs who signed the release, with the exception of the record-keeping claim, constitute potential claims that existed before September 30, 1997, within the meaning of the release.
Likewise, we find that the claims advanced by the 382 plaintiffs who signed the releases are “similar” to those asserted by the plaintiffs in Durant I, 456 Mich 175, within the meaning of the release. Generally, the *709 term “similar” means “having a likeness or resemblance, esp. in a general way; having qualities in common.” Random House Webster’s College Dictionary (1997), p 1204. However, the meaning of a term, plain or not, is supplied by its setting and context. People v Vasquez, 465 Mich 83, 89; 631 NW2d 711 (2001). Accordingly, we examine the language of the release to ascertain the meaning ascribed to the term “similar” by the Legislature and the releasing plaintiffs.
The language of the release is broad and identifies only claims or potential claims arising from “violations of section 29 of article IX of the State Constitution of 1963,” rather than referencing the MOS or the POUM clauses. The release also references funding that the local and intermediate school districts are entitled to receive “by reason of the application of section 29 of article IX of the state constitution of 1963.” Additionally, the opening paragraph of the release indicates the 382 releasing plaintiffs’ intent “to settle and compromise, in their entirety, any claim or claims” that arise from a violation of art 9, § 29. These repeated general references to art 9, § 29, combined with the express intent to release all claims or potential claims in their entirety, without restriction, reveal that the term “similar” was not intended to mean “identical,” but was intended to mean “having a general resemblance to, although possessing occasional points of difference.”
From a practical perspective, then, the statutory release is not limited to only those claims raised under the MOS clause. Rather, we believe that the release is intended to release any claim of a funding shortfall arising from a violation of art 9, § 29, regardless of under which clause the claim arises. Indeed, to *710 conclude otherwise would overlook the fact that some of the Durant I litigants raised claims under the POUM clause and that our Supreme Court has characterized those claims advanced by a group of thirty-three suits this Court consolidated with the original Durant suit, as “similar” to the claims advanced in the original Durant suit. Durant, supra, 456 Mich 188.
In light of the foregoing, we conclude that all but the record-keeping claim fall within the scope of the statutory release. Those claims are barred by the release and, therefore, we grant summary disposition pursuant to MCR 2.116(C)(7) in favor of the state and against the releasing plaintiffs. We also grant summary disposition pursuant to MCR 2.116(C)(7) in favor of the state and against those taxpayer plaintiffs who represent the releasing plaintiffs. See, e.g., Wayne Co Chief Executive, supra at 271. To do otherwise would effectively nullify the individual releases.
REMAINING CLAIM
Finally, the record-keeping obligation we have referenced throughout this opinion is set forth in ¶ 22K of count in of plaintiffs’ second amended complaint, as follows:
By operation of MCL 388.1752, and Executive Order No. 2000-9 [sic 2000-6], school districts are required to create and maintain data on essential student data elements, as determined by the Center for Educational Performance and Information and the Michigan Department of Education, on an on-going basis and in a format fixed by the Center and/or Department and to report same via internet transmission to the Michigan Department of Education for the purpose of the creation and maintenance of a Single Record *711 Student Database (srsd) as part of the Department’s Michigan Education Information System (meis).
The state asserts that the information-gathering, record-keeping, and data-reporting obligations, identified in MCL 388.1752 and Executive Order 2000-6, do not constitute an activity or service within the meaning of the poum clause of art 9, § 29. In the alternative, the state asserts that neither MCL 388.1752 nor Executive Order 2000-6[5] increases the level of an activity or service beyond the level required in 1978 within the meaning of § 29 as a matter of law. The state reasons that these record-keeping obligations already existed when the Headlee Amendment became effective, under MCL 388.1552 (as enacted in 1977 PA 90), which required plaintiffs to “furnish to the department those reports as the department considers necessary for the determination of the allotment of funds” under the State School Aid Act.
We conclude that neither MCL 388.1752 nor Executive Order 2000-6, separately or in combination, mandate a new activity or increase the level of a state-mandated activity within the meaning of the POUM clause. As the state correctly points out, at the time that the Headlee Amendment became effective, MCL 388.1552 set forth a portion of the information-gathering, record-keeping, and information-reporting obligations of plaintiff districts and agencies. The *712 statute provided: “Before the first Monday in November of each year, each district shall furnish to the [Department [of Education] those reports as the department considers necessary for the determination of the allotment of funds under this act.” MCL 388.1552, as codified in 1977 PA 90, § 152. The language employed in this statute sets forth an obligation, the scope of which is sweeping and undefined and rests in the discretion of a department within the executive branch.
Although the Legislature repealed MCL 388.1552 in 1979 PA 94, § 171, the Legislature recodified the obligation at MCL 388.1752. 1979 PA 94, § 152. Subsequently, the Legislature amended this statutory provision by adding the following language:
In order to receive funds under this act, each district and intermediate district shall also furnish to the [Department [of Education] the information the department considers necessary for the administration of this act and for the provision of reports of educational progress to the senate and house committees responsible for education, the senate and house appropriations subcommittees responsible for appropriations to school districts, and the senate and house fiscal agencies, as appropriate. [MCL 388.1752, as amended by 1989 PA 197, § 152.]
This amendatory language makes no substantive change in the nature of the obligation previously imposed under MCL 388.1552. Rather, the amendment simply defines the scope of the obligation. Clarifying nonsubstantive changes in an earlier, existing state law does not constitute a new activity or service or increase in the level of an existing activity or service. MCL 21.233(7).
*713 Turning now to the executive order, it creates, for a two-year duration ending September 27, 2002, the Center for Educational Performance and Information. The executive order confers on the center the duty to gather various educational and other data from the districts and to format, store, and manage the data collected. Additionally, the executive order directs the center to provide technical assistance in such a manner that the data is easily accessed by certain “stakeholders” in an effective and sound public educational process. The rationale behind the creation of the center is expressed in the executive order as follows:
Whereas, a primary reason for improving the quality and availability of educational data is to increase public understanding of our education system in Michigan and to provide information that will help all Michigan residents know if their schools are meeting academic, financial and operational performance expectations and, if not, identify where improvements can be made; and
Whereas, local boards of education, school administrators, policymakers, educational organizations and parents need and use student, financial, personnel and building-level data to make informed decisions, research educational trends, measure student performance, evaluate various reforms, determine the educational value of each dollar spent, and efficiently and effectively distribute financial, human and other resources; and
Whereas, the existing methods of gathering educational data are often inefficient, paper-based, redundant, inconsistent, time consuming and scattered throughout state and local government, thus making it difficult for the public to easily ascertain how well schools are performing. [Executive Order 2000-6.]
We find that the executive order mandates no new activity within the meaning of art 9, § 29. The data *714 addressed by the executive order is already in the possession of plaintiff districts and agencies in various forms as a by-product or necessary consequence of general school operations. Plaintiff school districts and agencies are already under a broad duty to report a variety of data pursuant to MCL 388.1752. To the extent that plaintiff districts and agencies are now required to report the information in a uniform manner through the Internet, we believe that such activity does not implicate art 9, § 29, because the state may require local units of government to take advantage of improved technology to streamline and increase the efficiencies of a process by which the public is served without running afoul of the goals of the Headlee Amendment. Judicial Attorneys Ass’n, supra at 605.
Further, the gathering of this data and its transfer to a central location for use in evaluating the efficiency and effectiveness of the educational delivery process and in developing improved methods of providing elementary and secondary education are administrative functions that constitute the essence of the state’s constitutional obligation to “maintain and support a system of free public elementary and secondary schools . . . .” Const 1963, art 8, § 2. In effect, the executive order executes a constitutional mandate. Accordingly, the activities required by the order fall outside the ambit of the restrictions imposed by the Headlee Amendment. Durant, supra, 424 Mich 387-388. As observed by a panel of this Court in Durant, supra, 129 Mich App 524, not all functions performed by a school district are required by state law within the meaning of the Headlee Amendment. For these reasons, we grant summary *715 disposition in favor of the state pursuant to MCR 2.116(C)(10) with regard to ¶ 22K of count in of the second amended complaint.
Having resolved all claims in favor of the state, we dismiss plaintiffs’ complaint with prejudice.
Holbrook, Jr., P.J., concurred.

 See, e.g., Andreas v Michigan, Court of Appeals Docket No. 93569 (consolidated with the Durant I litigation on August 19, 1993).

 Plaintiffs concede in their answer to the state’s motion for summary disposition that an audit by a certified public accountant is not a new requirement for purposes of art 9, § 29. Accordingly, plaintiffs “no longer *700 seek to have this item included in their request for declaratory relief.” We grant summary disposition pursuant to MCR 2.116(C)(10) in favor of the state with regard to this claim.

 The requirement that plaintiff school districts must provide summer school classes for pupils who fail to meet the standards for basic literacy skills or basic mathematic skills by the end of the third grade year is set forth at MCL 380.1282a Our Legislature has repealed MCL 380.1282a by 2001 PA 121. Accordingly, we grant summary disposition pursuant to MCR 2.116(C)(10) in favor of the state with regard to this claim.

 To the extent that plaintiffs assert that future claims may not be released, they are mistaken. Rights that have not matured may be released. 66 Am Jur 2d, Release, § 33, p 402; 2 Restatement Contracts, 2d (1981), § 284, comment a, p 392; Continental Corp v Gowdy, 283 Mass 204, 215; 186 NE 244 (1933).

 The parties do not address whether an executive order constitutes state law for purposes of art 9, § 29. Because an action taken by a governor through an executive order has the status of enacted legislation, Straus v Governor, 459 Mich 526, 534; 592 NW2d 53 (1999), and because enacted legislation constitutes state law for purposes of art 9, § 29, Durant, supra, 424 Mich 378-380, we believe that an executive order constitutes a state law for purposes of art 9, § 29.